Finley **DIGGS** et al., Appellants,

v.

**CITIES SERVICE OIL COMPANY**
et al., Appellees.

No. 5454.

United States Court of Appeals
Tenth Circuit.

Feb. 6, 1957.

Haskell Paul and Charles E. Jackson, Pauls Valley, Okl., for appellants.

Barth P. Walker, Oklahoma City, Okl., for appellees.

Before BRATTON, Chief Judge, and MURRAH and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

Appellants seek reversal of a judgment of the District Court for the Eastern District of Oklahoma decreeing appellees to have existing rights under an oil and gas lease upon certain lands located in Garvin County, Oklahoma. Appellants, plaintiffs below, are successors in interest to the original lessors; appellees have obtained all rights of the original lessees. Jurisdiction is based upon diversity and a claim for a requisite amount.

The original lease, executed in 1945, was for a primary term of ten years to be extended by production only and contained a pooling clause.[1] Shortly before the expiration of the primary term, appellee Cities Service Oil Company filed, in accordance with the lease and Oklahoma statutory requirements, a declaration of unitized operation which effected a pooling of part of the leased lands with other lands held by Cities Service. The declaration pooled 80 acres for gas rights only. Appellees, still within the primary term of the lease, drilled a producing well, the Heffington, upon lands included in the pooled unit but not upon lands contained within the properties described in the original lease.

Upon the expiration of the primary ten-year term, appellants filed this action seeking a judgment decreeing the rights of appellees to have been terminated by a lapse of time because (a) appellees under the facts and circumstances existing at the time of pooling did not act in good faith and (b) the

[1] "Lessee at its option is hereby given the right and power to pool or combine the acreage covered by this lease or any portion thereof, with other land, lease or leases in the immediate vicinity thereof, when in lessee's judgment it is necessary or advisable to do so in order to properly develop and operate said leased premises so as to promote the conservation of oil, gas or other minerals in and under and that may be produced from said premises, such pooling to be of tracts contiguous to one another and to be into a unit or units not exceeding 40 acres each in the event of an oil well, or into a unit or units not exceeding 640 acres each in the event of a gas well. Lessee shall execute in writing and record in the conveyance records of the county in which the land herein leased is situated an instrument identifying and describing the pooled acreage. The entire acreage so pooled into a tract or unit shall be treated, for all purposes except the payment of royalties on production from the pooled unit, as if it were included in this lease. If production is found on the pooled acreage, it shall be treated as if production is had from this lease, whether the well or wells be located on the premises covered by this lease or not. In lieu of the royalties elsewhere herein specified, lessor shall receive on production from a unit so pooled only such portion of the royalty stipulated herein as the amount of his acreage placed in the unit or his royalty interest therein on an acreage basis bears to the total acreage so pooled in the particular unit involved."

producer drilled upon the consolidated unit was an oil well and, since the pooling was of gas rights only, did not extend the primary term of the lease through production.

 The question of whether or not appellees were faithful to the duties and obligations imposed upon them by the terms of the lease so as to have acted in "good faith" in pooling gas rights is one of fact to be determined by a consideration of the circumstances and conditions existing at the time of action. A careful review of the record and the mass of geological and other technical fact and opinion that explore appellees' good faith merely points to a conflict in most instances. Appellants offered expert testimony, which if credible, tended to show that no sound geological basis existed at the time of pooling from which appellees could determine whether a successful well would produce gas or whether it would produce oil. From this premise [2] appellants would have the trial court infer that the pooling of the larger acreage for gas was motivated solely by appellees' desire to retain maximum acreage benefits to themselves, by technical but sham compliance with the terms of the lease. The trial court, in view of testimony that appellees pooled and drilled upon advice of their own experts and expended large sums of money in reliance thereon to bring in a well actually producing large quantities of gas, found no lack of good faith existed. This finding is of course justified for good faith may be probed by consideration of the subsequent actions of the person whose subjective intent is questioned.

 Whether the Heffington is an oil well or a gas well is a plain question of fact to be determined, under Oklahoma law, by the relative quantities of each produced therefrom. Application of R. Olsen Oil Co., 205 Okl. 498, 239 P.2d 415. This well produces both gas and a liquid known as gas condensate or distillate, a condition not uncommon in the industry, at a ratio of 33,000 cubic feet of gas to each barrel (5.61 cubic feet) of liquid during each 24-hour period. The gravity of liquid produced is 58°. The Corporation Commission of Oklahoma classifies a well which produces liquid hydrocarbons of 50° or higher gravity as a gas well. Rejecting, as do we, a contention of appellants that a payment provision in the lease for gas from a well *where gas only* is found as intended to be definitive, the trial court found the Heffington to be a gas well. We are not convinced the finding should be disturbed.

 During oral argument at the presentation of this case, appellants for the first time advanced the legal theory that the pooling agreement was invalid under Oklahoma law because made before drilling was initiated. No authority is cited to support this contention nor was it mentioned in any way at the trial nor argued in appellants' brief. Under such circumstances we are neither constrained nor inclined to consider the contention.

The judgment is affirmed.

---

2. The premise is not necessarily sound even if credible. Many producing wells have been drilled in good faith but contrary to the weight of geological opinion. The discretion of when and how to drill is usually a prerogative of the driller and a mere exercise of that privilege contrary to the desires of lessors does not show lack of good faith. See Boone v. Kerr-McGee Oil Industries, Inc., 10 Cir., 217 F.2d 63.