**UNITED STATES of America,**
**Appellee,**

v.

**Dale P. EWING, d/b/a Action Publishing Company, Appellant.**

**No. 638-70.**

United States Court of Appeals,
Tenth Circuit.

July 15, 1971.

Larry E. Butcher, Atty., Dept. of Justice, Washington, D. C. (William C. McCorriston, Atty., Dept. of Justice, C.

Nelson Day, U. S. Atty. and H. Ralph Klemm, Asst. U. S. Atty., with him on brief), for appellee.

Robert T. Bertholdo, Encino, Cal., for appellant.

Before SETH, ALDISERT*, and McWILLIAMS, Circuit Judges.

ALDISERT, Circuit Judge.

The main thrust of this appeal from a conviction of ten counts of violating 18 U.S.C. § 1461,[1] knowing use of the mails for the delivery of obscene material, has been blunted by the recent decision in United States v. Reidel, 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971), which reaffirmed the constitutionality of the Act. Remaining for our consideration is a challenge to the court's charge and the question whether sufficient evidence was introduced to submit the case to the jury under the standards of Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).[2]

Appellant was indicted on nineteen counts of mailing obscene material and six counts of mailing an advertisement giving information where obscene material might be obtained. A jury found him not guilty on eleven of the first nineteen counts. The court directed a verdict of acquittal in two of the last six counts. The jury disagreed in the remaining twelve. At a second jury trial he was convicted on ten counts,

---

* Of the Third Circuit sitting by designation.

1. 18 U.S.C. § 1461 provides:
   Every obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device, or substance * * *
   Is declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier.
   Whoever knowingly uses the mails for the mailing, carriage in the mails, or delivery of anything declared by this section to be nonmailable, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, * * * or of aiding in the circulation or disposition thereof, shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense, and shall be fined not more than $10,000 or imprisoned not more than ten years, or both, for each such offense thereafter.

2. Appellant, like the appellant in Riedel, supra, sought to undercut the viability of Roth, grounding his argument on the right of privacy doctrine enunciated in Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). "But Roth has squarely placed obscenity and its distribution outside the reach of the First Amendment and they remain there today. Stanley did not overrule Roth and we decline to do so now." United States v. Reidel, supra, 402 U.S. at 356, 91 S.Ct. at 1413 (1971).

after the government withdrew one and the court dismissed another.[3]

The material in question, bearing exotic names as "Madam Sado Meets Mrs. Meso," "Nina in Restraint," "Dancers in Bondage," "Spanking Rhapsody," "Torture Bare-Bottom," "Degraded in Bondage," and "Whipping Lez," was, according to expert testimony, designed for the interest of the sadomasochist or fetishist. The publications emphasized, *inter alia,* bondage, flagellation, wrestling, spanking and, in general, suggested beatings or acts of injury. Other materials represented the female form in grotesque and exaggerated caricature or portrayed women dressed in clothing designed to stimulate fetishists.[4]

Appellant's complaint was directed to this portion of the court's charge:

> Now I have already defined a prurient interest in sex as a morbid or shameful or an unhealthy interest in sex; and the government must prove beyond a reasonable doubt that the material in question did appeal to the sexual interest of such alleged well-defined group and that such interest was a prurient interest.
>
> I further instruct you regarding the element of prurient interest as distinguished from some other sexual interest that it is not necessary for you to find beyond a reasonable doubt that the members of such a deviant sexual group themselves felt shame or morbidity in their interest sexually in this material, if any you so find. It is sufficient if you find beyond a reasonable doubt that the books charged in any of the counts 2, 4, 5, 10, 13, 17 or 18 appeal to the sexual interest of the members of such deviant sexual

groups and that to the average person and within the ordinary meaning of language such interest was and is shameful or morbid, if you so find, and then the prurient appeal requirement would be satisfied as to each count, notwithstanding the presence or absence of feelings of shame or morbidity in the members of such deviant sexual groups or some of them.

Conceding the first two sentences of the foregoing to be a correct expression of the law, appellant contends that a new trial should be ordered because the court fell into prejudicial error when it next used the expression "sexual interest of the members of such deviant sexual groups" instead of "prurient interest." Material which appeals to the sexual interest, he urges, is not obscene; it is only when the interest is prurient, i. e., morbid, shameful, or unhealthy, that the material leaves the protective barrier of the First Amendment and becomes obscene. Roth v. United States, *supra.*

■ Although we acknowledge this as a fair statement of the distinction between an interest that is merely sexual and one that is prurient, our quarrel with appellant is that he does not fairly describe the entire charge of the court. Indeed, when read in its entirety, the very sentence in which the expression "sexual interest" is used properly states the law of obscene material designed to appeal to a deviate sexual group. Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966). The teachings of *Roth* and *Mishkin* merely require the government to demonstrate in such cases (1) that the materials are designed to show a degree of sexual arousal or interest on the part of the deviant and (2)

---

3. A substantial challenge to the second trial arose on this appeal when at oral argument it appeared that appellant had been mistakenly retried on Count Five after an original verdict of not guilty. The court directed both parties to submit supplemental briefs on the questions of double jeopardy raised by this error. Subsequent investigation has revealed, however, that the district court docket sheet was in error, and that the jury did not return a verdict on the count in question. This

obviates, of course, any further discussion of this issue.

4. "It reaches to a type of sexual problem that people have which we call a fetish. Now, there are well-known fetishes, and a fetish simply means that a person is interested in an object rather than in the personal part of sex or the human part of sex." Psychiatric testimony adduced at trial.

that when such interest is evaluated by the jury, it is found by them to be shameful and morbid, after applying the standards of the national community as a whole.[5]

■ This burden of proof is not always easily discharged, however. In United States v. Klaw, 350 F.2d 155 (2 Cir. 1965), the government merely introduced into evidence the sadomasochistic materials in question. In reversing the conviction, the court concluded:

the jury had insufficient evidence to "recognize" that the material appealed to the prurient interest of the average person. It had absolutely no evidentiary basis from which to "recognize" any appeal to the prurient interest of the deviate or the typical recipient—a class never really defined in the record.

365 F.2d at 168. While we share the trepidation expressed by the court in *Klaw* when a jury must, without assistance or guidance, pass on the legitimacy of allegedly obscene publications,[6] we cannot say that the government did not sustain its burden in this case. Both the class of recipients and the nature of its prurient interest were well defined by expert testimony. A ₀professional psychiatrist examined the exhibits, described the groups to whom various exhibits would hold some appeal, and testified that the dominant theme of the exhibits when taken as a whole appealed to the prurient interest in sex of the sado-masochist type.[7]

---

5. Appellant insists that this interpretation renders prurient for First Amendment purposes the mere sexual interest of the deviant. He may indeed be correct. But whether the ramifications of such a test applied to the sexual interests of deviant groups be as pernicious as appellant suggests, this does appear to be the clear import of *Mishkin*:

> Where the material is designed for and primarily disseminated to a clearly defined deviant sexual group, rather than the public at large, the prurient-appeal requirement of the *Roth* test is satisfied if the dominant theme of the material taken as a whole appeals to the prurient interest in sex of the members of that group. The reference to the "average" or "normal" person in *Roth*, 354 U.S. at 489–90 [77 S.Ct. at 1311], does not foreclose this holding. In regard to the prurient-appeal requirement, the concept of the "average" or "normal" person was employed in *Roth* to serve the essentially negative purpose of expressing our rejection of that aspect of the *Hicklin* test, Regina v. Hicklin, [1868] L.R. 3 Q.B. 360, that made the impact on the most susceptible person determinative. We adjust the prurient-appeal requirement to social realities by permitting the appeal of this type of material to be assessed in terms of the sexual interests of its intended and probable recipient group.

383 U.S. at 508–509, 86 S.Ct. at 963.

6. In this case, however, the only predicate for any conclusion about prurient appeal was the material itself, as if *res*

*ipsa loquitur.* The jurors were, therefore, left to speculate. They were invited to behold the accused material and, in effect, conclude simply that it is undesirable, it is distasteful, it is disgusting. Knowing perhaps that they would not be interested in obtaining more of the material they might wonder why anyone else would, and conclude that the only answer is "prurient appeal". Because the jury was given no basis for understanding exactly how and why the material appeals to its audience, whether deviate or average person, it may too readily supply an explanation—"prurient appeal". Even if the jury did not consist of twelve carefully selected Anthony Comstocks, it might well believe that the predominant appeal of certain acknowledged words of art, sculpture and literature found in all our well-known museums and libraries would be to the prurient interest of the average person, or perhaps someone else. But if that be so, can we allow the censor's stamp to be affixed on the basis of an uninformed jury's misconceptions?

United States v. Klaw, *supra*, 350 F.2d at 167.

7. Q. As a professional psychiatrist, can you state whether there is any definition that describes these groups of people to whom various ones of those exhibits might hold some appeal?

A. In a technical way, from a psychiatric point of view, this sort of material appeals to people whom we call the sadist or the masochist. Now,

■ Similarly, substantial evidence was adduced to eviscerate appellant's claim, bottomed on Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), that the requisite *scienter* under 18 U.S.C. § 1461 was not established. Concededly, the materials questioned here are not pornography so "hard core" that there could be "no possible avoidance of *scienter*, no suggested proper purpose, no conceivable community standard which would permit the indiscriminate dissemination of this material, no alleviating artistic overtones," Womack v. United States, 111 U.S.App.D.C. 8, 294 F.2d 204, 206, cert. denied, 365 U.S. 859, 81 S.Ct. 826, 5 L.Ed.2d 822 (1961); United States v. Wild, 422 F.2d 34, 36 (2 Cir. 1969). But appellant's business partner, receptionist, and a photographic model all testified to appellant's role in establishing and conducting his business. Unquestionably present was the "calculated purveyance" required under the more stringent New York test applied in *Mishkin, supra,* 383 U.S. at 510, 86 S.Ct. 958. This is sufficient to find *scienter* here. Kahm v. United States, 300 F.2d 78, 86 (5 Cir. 1962).

■ We have carefully considered appellant's remaining contentions properly before the court and find them to be without merit.[8] Accordingly, the judgment of the district court is affirmed.

---

there are many lay terms that are applied to this. Some people call them the—people who like to be beaten. Some call them the type of people who like to tie each other up. Some people have strange and catch names for this sort of person. But basically, the material appeals to a well-defined psychiatric type, the people who are sadists or masochists. These are well known, and there are quite a number of these people in our society.

\*       \*       \*       \*       \*

Q. (By Mr. Butcher) Amongst these people that you describe as sadomasochists, are there any particular well-defined subclassifications, depending on the particular problem a person might have?

A. Yes. There are people who like to beat another person. There are people who like to spank another person. There are people who like to be beaten by another person. There are people who like to be spanked by another person. There are people who like to tie other people up with chains or put them into tightly fitting special overcoats,

that sort of thing, or put tight shoes on them.

And the reverse, there are people who like to have that done. The salient feature, the important factor involved, is that these people get a sexual release or a sexual stimulation out of these acts, or even thinking about these acts, rather than the stimulation which most people get from the act of intercourse.

8. Appellant devoted much of his oral argument to the contention that the government's case was defective because it failed to introduce evidence of national contemporary community standards. We are "neither constrained nor inclined to consider the contention", Diggs v. Cities Service Oil Co., 241 F.2d 425, 427 (10 Cir. 1957), because the point was not presented as a question for appeal as required by Tenth Circuit Rule 9, Docketing Statement, nor preserved in appellant's brief in the statement of issues presented for review. Fed.R.App.Pro. 28(a) (2). The question appeared for the first time as one paragraph in his reply brief without a citation of a specific authority supporting the contention.