**Alton A. WEST, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 45090.**

Court of Criminal Appeals of Texas.

Sept. 25, 1972.

Rehearing Denied Feb. 7, 1973.

598

William J. Gillespie, Phil Brummett, Lubbock, for appellant.

Thomas J. Purdom, County Atty., and Joel Howard, Asst. County Atty., Lubbock, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

OPINION

ODOM, Judge.

This is an appeal from a conviction for the offense of exhibiting obscene matter. Punishment was assessed at thirty days confinement and a $200.00 fine. The jail term was probated for a period of one year.

Appellant challenges the validity of his conviction on four grounds. He argues that: (1) a hearing was not held prior to the issuance of the search warrant authorizing the seizure of the material in question in derogation of his rights under the First, Fourth and Fourteenth Amendments to the United States Constitution; (2) the evidence is insufficient to support the conviction; (3) the material in question is not obscene as a matter of law; and (4) the evidence shows that appellant is a projectionist, which category of persons is specifically excluded from the provisions of Article 527, Vernon's Ann.P.C.

The record reflects that Officers Garrett and Daniels of the Lubbock Police Department received information that obscene movies were being shown at the Cinne-Arts Theater located in that city. On November 18, 1969, the officers, acting on the basis of this information, went to the theater, paid the admission price and viewed the films which were being exhibited. Believing these films to be obscene, the officers contacted Harold O. Brown, who was then an assistant county attorney for Lubbock County; and Brown aided the officers in preparing an affidavit for a search warrant.

On November 19, 1969, Brown, the officers and Justice of the Peace Wayne LeCroy went to the theater for the purpose of viewing these films. When they arrived at the theater, Brown advised appel-

lant of the purpose of the visit and requested that appellant contact his attorney so that the attorney might be present. They then entered the theater and began viewing the films which were being shown. Approximately ten minutes later, Phil Brummett, appellant's attorney, arrived. While viewing the films, appellant's counsel and the assistant county attorney discussed with Justice of the Peace LeCroy "whether or not it was erotic and such as that and to what extent" and "made comments about the nature of the film."

After having viewed these films, Officers Garrett and Daniels signed the affidavit and swore to the truthfulness of the statements made therein. Justice of the Peace LeCroy then issued the search warrant, the film was seized, and appellant was arrested.

■ The First Amendment to the Constitution of the United States is based on the philosophy that the free exchange of divergent views is the best means of solving the problems which confront this country. It protects the right to receive communication [1] as well as protecting the right to communicate.[2] However, "[t]he First Amendment protects the communication of *ideas*, not all communication." Deeds v. State, 474 S.W.2d 718 at 720. Thus, incitement to illegal action,[3] libel,[4] "fighting words"[5], and obscenity,[6] while communicative, do not express ideas and have been found to be unprotected by the First Amendment. Expression of ideas through the medium of motion pictures is included within the free speech and free press guaranties of the First Amendment. Interstate Circuit, Inc. v. Dallas, 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968); Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed.2d 1098 (1952).

■ Because prior restraints upon protected speech suppress the very freedom which the First Amendment was designed to protect,[7] any system of prior restraints is presumed to be constitutionally invalid until its validity has been proved by the state. E. g., Teitel Film Corp. v. Cusack, 390 U.S. 139, 88 S.Ct. 754, 19 L.Ed.2d 966 (1968); Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). The procedures utilized to suppress obscenity must be designed so as to "ensure against the curtailment of constitutionally protected expression, which is often separated from obscenity only by a dim and uncertain line." Bantam Books, Inc. v. Sullivan, supra. Since this line is often so uncertain, "the separation of legitimate from illegitimate speech calls for . . . sensitive tools . . ." Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958).

■ Political and social expressions must be allowed to be communicated while they are timely. Carroll v. President and Commissioners of Princess Anne, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968). Where the state attempts to suppress communication, whether by injunction,[8] seizure

---

1. E. g., Red Lion Broadcasting Co. v. F.C.C., 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969); Lamont v. Postmaster General, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965).

2. E. g., Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969); Kingsley International Pictures Corp. v. Regents, 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed.2d 1512 (1959).

3. Brandenburg v. Ohio, supra.

4. Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967).

5. Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942).

6. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

7. Carroll v. President & Commissioners of Princess Anne, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968); Near v. State of Minnesota ex rel. Olson, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931).

8. Freedman v. Maryland, supra.

of allegedly obscene matter,[9] or denial of mail privileges,[10] prompt and adequate judicial scrutiny of possible violation of First Amendment rights is required. A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964).

■ The seizure of allegedly objectionable publications for evidentiary purposes can act as a prior restraint on speech. Stanford v. Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). For this reason, the procedural requirements are more stringent for a lawful seizure of allegedly obscene material than they are for non-speech related types of contraband. Marcus v. Search Warrants, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961).

Appellant argues that his pre-trial motion to suppress evidence seized pursuant to the search warrant should have been granted because: (1) an adversary hearing must be held prior to the issuance of a search warrant authorizing the seizure of an allegedly obscene motion picture, and (2) such a hearing was not held in the instant case.

The United States Supreme Court has not yet determined whether an adversary hearing must be held prior to the seizure of a motion picture,[11] and, as we noted in Bryers v. State, Tex.Cr.App., 480 S.W.2d 712, other courts are "sharply in conflict" on this issue.[12]

At the time the search in issue in the instant case was conducted, Article 527, Sec.

9. Marcus v. Search Warrants, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961).

10. Blount v. Rizzi, 400 U.S. 410, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971).

11. In Lee Art Theatre, Inc. v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968), the Supreme Court implied that a valid basis might exist for treating films differently in this respect than written material. In a *per curiam* opinion, the Court stated that:
   "It is true that a judge may read a copy of a book in a courtroom or chambers but not easily arrange to see a motion picture there. However, we need not decide in this case whether the justice of the peace should have viewed the motion picture before issuing the warrant."
   The opinion did not even mention the possibility that a prior adversary hearing might be required.

12. Among the cases holding that a prior adversary hearing is necessary are: United States v. Alexander, 428 F.2d 1169 (8th Cir. 1970); Demich, Inc. v. Ferdon, 426 F.2d 643 (9th Cir. 1970); Astro Cinema Corp. Inc. v. Mackell, 422 F.2d 293 (2d Cir. 1970); Cambist Films, Inc. v. Duggan, 420 F.2d 687 (3rd Cir. 1969); Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2d Cir. 1969); cert. denied, 397 U.S. 920, 90 S.Ct. 929, 25 L.Ed.2d 101 (1970); Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4th Cir. 1969); Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968); Newman v. Conover, 313 F.Supp. 623

(N.D.Tex.1970); Gable v. Jenkins, 309 F.Supp. 998 (N.D.Ga.1969), aff'd, 397 U.S. 592, 90 S.Ct. 1351, 25 L.Ed.2d 595 (1970); Fontaine v. Dial, 303 F.Supp. 436 (W.D.Tex.1969), appeal dismissed for lack of jurisdiction, 399 U.S. 521, 90 S.Ct. 2235, 26 L.Ed.2d 779 (1970); Flack v. Municipal Court, 66 Cal.2d 981, 59 Cal.Rptr. 872, 429 P.2d 192 (1967). For cases holding that a hearing prior to seizure is not required or is not necessary in all cases, see: Overstock Book Company, Inc. v. Barry, 436 F.2d 1289 (2d Cir. 1970); United States v. Wild, 422 F.2d 34 (2d Cir. 1970); People v. Heller, 29 N.Y.2d 319, 327 N.Y.S.2d 628, 277 N.E.2d 651 (1971), cert. granted, 406 U.S. 916, 92 S.Ct. 1765, 32 L.Ed.2d 115 (1972); State v. Osborne, 117 N.J. Super. 409, 285 A.2d 43 (1971); State ex rel. Howard v. O'Connell, 53 Wis.2d 248, 192 N.W.2d 201 (1971); Commonwealth v. State Amusement Corp., 356 Mass. 715, 248 N.E.2d 497 (1969).
See generally Note, The Right to an Adversary Hearing on the Issue of Obscenity Prior to the Seizure of Furtively Distributed Films, 69 Mich.L.Rev. 913 (1971); Comment, Prior Adversary Hearing on the Question of Obscenity, 70 Colum.L.Rev. 1403 (1970). Monaghan, Henry P., First Amendment "Due Process," 83 Harv.L.Rev. 518 (1970).
For recent cases holding that the exclusionary rule does not apply to this situation, see United States v. Cangiano, 464 F.2d 320 (2d Cir. 1972); Huffman v. United States, 470 F.2d 386 (D.C.Cir. 1971).

9, V.A.P.C., did not require that an adversary hearing be conducted prior to the seizure of allegedly obscene matter. Since that time this statute has been amended so as to require such a hearing. We decline to determine the constitutional necessity for such a hearing, for, assuming *arguendo* that an adversary hearing is required, we conclude that a hearing was held in the instant case prior to the issuance of the search warrant.

■ The purpose for requiring a hearing prior to the issuance of a search warrant is to provide protection against governmental suppression of nonobscene expression. Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2d Cir. 1969) cert. denied, 397 U.S. 920, 90 S.Ct. 929, 25 L.Ed.2d 101; Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4th Cir. 1969) cert. denied, 396 U.S. 985, 90 S.Ct. 477, 24 L.Ed.2d 449. The adversary requirement is added due to the feeling that:

> "The seizure of film after no more than an *ex parte* determination of probable cause is essentially a prior restraint of expression—especially inimicable to the First Amendment—and clearly lacks the sensitivity required by the Constitution." Fontaine v. Dial, 303 F.Supp. 436 at 439 (W.D.Tex.1969).

■ However, the hearing need not be a "fully matured action at law." Tyrone, Inc. v. Wilkinson, supra, 410 F.2d at 641. The state need not prove obscenity beyond a reasonable doubt, only that probable cause exists for the issuance of the warrant. E. g., Overstock Book Company, Inc. v. Ferdon, 426 F.2d 643 (9th Cir. 1970); Tyrone, Inc. v. Wilkinson, supra; United States v. Little Beaver Theatre, Inc., 324 F.Supp. 120 (S.D.Fla.1971). The question of obscenity *vel non* must await the trial on the merits. Morever, since time is of the essence in these cases, both with regard to protecting the dissemination of protected communication and to prohibit the distribution of obscenity, exhibitors must be prepared to defend their films on short notice against a charge of obscenity. Braha v. Texas, 319 F.Supp. 1331 (W.D. Tex.1970).

■ In the instant case, the film in question was viewed by the magistrate in the theater in which it was being exhibited to the public and in the presence of counsel for appellant and for the state. Both appellant and his attorney were aware that the purpose of the magistrate's visit was to determine whether probable cause existed for the seizure of the films. Counsel for appellant and for the state discussed the nature of the film with the magistrate. Appellant has not shown that he was denied the right to present any relevant evidence on the issue of probable cause; that he was denied adequate time for preparation; or, that he requested a continuance for preparation purposes. Instead, he "takes the position that the informal gathering which took place at the theater could not be considered an adversary hearing by any stretch of the imagination . . . ." We disagree.

■ The term "adversary hearing" has no magical meaning which connotes only a proceeding in a court house with robed judges presiding. All that term does require is that an exhibitor or speaker have a fair opportunity to present reasons why a seizure should not take place. See, Braha v. Texas, supra; Star-Satellite, Inc. v. Rosetti, 317 F.Supp. 1339 (S.D.Miss.1970); Cambist Films, Inc. v. Illinois, 292 F.Supp. 185 (N.D.Ill.1968). See also, Lee Art Theatre, Inc. v. Virginia, supra at fn. 11. Under the facts presented in the case at bar, we find that a constitutionally sufficient adversary hearing was held prior to the seizure of the film. Appellant was afforded his right to counsel, and counsel for appellant was afforded an opportunity to direct the magistrate's attention to the proper legal principles to be applied.[13]

---

13. See, A Quantity of Copies of Books v. Kansas, supra. See generally, Carroll v. President and Com'rs of Princess Anne, supra; Monaghan, Henry P., First Amendment "Due Process", 83 Harv.L. Rev. 518 at 534 (1970).

The procedure utilized in the instant case did not in any way interfere with the exhibition of the film until after the magistrate had found, on the basis of the evidence before him, probable cause to believe that the film was obscene. The record reflects that the purposes for an adversary hearing were met by the proceedings conducted in the instant case.[14] Moreover, the fact that the magistrate and the state went beyond mere compliance with the procedure required by the statute then in force demonstrates their good faith effort to protect the First Amendment rights involved.[15] The trial court properly overruled appellant's motion to suppress.

When the right of free expression is involved, we "cannot avoid making an independent constitutional judgment on the facts of the case as to whether the material involved is constitutionally protected." Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964). Accord, Manual Enterprises v. Day, 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962); Groner v. United States, (5th Cir. #71–1091 1972); United States v. 35 MM. Motion Picture Film, 432 F.2d 705 (2d Cir. 1970); United States v. A Motion Picture Film, 404 F.2d 196 (2d Cir. 1968); Bryers v. State, supra; Hunt v. State, Tex.Cr. App., 475 S.W.2d 935. Thus, we must direct our inquiry into the nature of the material which the trial court found to be obscene in light of the history and function of the constitutional guarantee of free speech and press. The question we must decide is whether the film in the instant

case merits the protection of the First Amendment.

These guarantees were:

". . . fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.

. . . . . .

"All ideas having even the slightest redeeming social importance—unorthodox ideas, controversial ideas, even ideas hateful to the prevailing climate of opinion—have the full protection of the guaranties, unless excludable because they encroach upon the limited area of more important interests. But implicit in the history of the First Amendment is the rejection of obscenity as utterly without redeeming social importance." Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) [footnote omitted].

Accord, Kois v. Wisconsin, 408 U.S. 229, 92 S.Ct. 2245, 33 L.Ed.2d 312 (1972).

Obscenity may be controlled, not because it is offensive, but because, failing to communicate ideas, it does not come within the ambit of First Amendment protection.

In order for a work to be classed as obscene, the state must show that:

". . . (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community stand-

---

14. As Mr. Justice Stewart, speaking for the majority in Cafeteria & Restaurant Workers Union, Local 473, AFL–CIO v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), reasoned:

"[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as the private interest that has been affected by governmental action."

The procedure utilized in the instant case protects the interests of the state in

regulating the dissemination of obscenity while protecting interests guaranteed by the First Amendment.

15. Where, as here, rights guaranteed by the Constitution are involved, law enforcement authorities should not feel limited by the minimal state procedural requirements so long as the procedure followed is in compliance with state statutes. Cf. Paprskar v. State, Tex.Cr.App., 484 S.W. 2d 731 (1972); Stoddard v. State, Tex. Cr.App., 475 S.W.2d 744.

ards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social importance." [16] A Book named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966).

Material is obscene only if all three elements, each independent, are proven.

Appellant argues that the state failed to prove that the film in question is obscene. He argues that: (1) the evidence is insufficient because the state failed to provide "testimony regarding an appeal to prurient interest, the contemporary community standards, nor a lack of redeeming social value" of the film, and (2) the film is not obscene as a matter of constitutional fact.

The state called three witnesses, Officers Daniels, Garrett, and Durteen. The testimony of these three officers relates to the chain of custody of the film from the time it was seized until it was introduced into evidence. The motion picture was admitted and viewed by the trial court.

■ The material which the trial court found to be obscene consists of two reels of 16 mm. film, each reel running for approximately thirty minutes. The film is untitled. It depicts isolated sequences of a single female disrobing and engaging in auto-eroticism interspersed with sequences of two females engaged in explicit sexual activity and a man and a woman engaged in such activity. The film has no plot, no dialogue, and no development of characters. Nothing is portrayed but the bodies of the "actors", with particular emphasis on the genital areas, and the acts in which they engaged.

Under this state of the record, we must determine whether the state met its burden of proof on the issue of obscenity solely by introducing the film in question. We hold that in the instant case that burden has been met.

In McCormick, Law of Evidence, Sec. 14, it is written:

"First, the subject of the inference must be so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman, and second, the witness must have such skill, knowledge or experience in that field or calling as to make it appear that his opinion will probably aid the trier in his search for the truth."

A decision on the necessity for opinion evidence must therefore begin with a clear understanding of the elements of the *Roth-Memoirs* test in order to determine whether expert testimony on these elements would be of any benefit to the trier of fact.

■ We start with the basic proposition that "sex and obscenity are not synonymous." Roth v. United States, supra. In order for material to be obscene, it first must be shown that such material deals with sex in a manner which appeals to prurient interest. The term "prurient interest," as defined in *Roth* at footnote 20, means "a shameful or morbid interest in nudity, sex, or excretion . . ." [17] Sub-

16. Article 527, Sec. 1(A), V.A.P.C., provides: "'Obscene' material means material (a) the dominant theme of which, taken as a whole, appeals to a prurient interest; (b) which is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) which is utterly without redeeming social value."
Since the statutory definition almost follows word-for-word the definition pro-

mulgated by the Supreme Court in Memoirs, we perceive no significant differences in these definitions. See, Bryers v. State, supra. See also, Newman v. Conover, 313 F.Supp. 623 (N.D.Tex. 1970). Our discussion on this issue should therefore be construed in terms of both definitions.

17. The above quoted definition was taken from the A.L.I. Model Penal Code, Sec. 207.10(2) (Tent. Draft No. 6, 1957).

sequent decisions appear to adhere to this restricted definition of "prurient appeal." See, e. g., United States v. Reidel, 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971); Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966); United States v. 35 MM. Motion Picture Film, supra; United States v. Wild, 422 F.2d 34 (2d Cir. 1970) cert. denied, 402 U.S. 986, 91 S.Ct. 1644, 29 L.Ed.2d 152; United States v. A Motion Picture Film, 404 F.2d 196 (2d Cir. 1968). The key, then, to a determination of prurient interest is the distinction "between the arousal of sexual instincts and the perversion of those instincts to morbidity." United States v. A 35 MM. Film, supra at 712. Once prurient appeal has been shown, the state must then prove both "patent offensiveness" and complete lack of redeeming social value.[18]

Initially, the trier of fact, whether trial court or jury, is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. Adair v. State, Tex.Cr.App., 482 S.W.2d 247. Where "constitutional facts" must be reviewed, the reviewing court is not bound by the opinion testimony adduced at trial.[19] Cf. A Book Named John Cleland's Memoirs of a Woman of Pleasure v. Attorney General of Massachusetts, supra; Hunt v. State, supra.

The testimony of experts can be utilized for guidance only and cannot alleviate the burden of making an independent review of the First Amendment problems involved.

A careful review of the record in the instant case convinces us that the state's evidence is sufficient and that the three criteria of the *Roth-Memoirs* test have been met.

The film which is before us for review depicts nothing but a sequential representation of explicit sexual acts. Each sequence of sexual conduct can only be interpreted within the context of the other sequences of sexual conduct.[20] No ideas are presented nor is there an attempt to present ideas.[21] The sequential representation in this film of nothing but isolated acts of sexual conduct demonstrates that its sole object was the commercial exploitation[22] of the prurient interest of

---

Other definitions contained in footnote 20 of the *Roth* opinion are basically to the same effect.

18. See *Memoirs*, supra at fn. 7. As the court stated in United States v. A 35 MM. Motion Picture Film, supra: "The overriding aspect of the *Memoirs* formula appears to have become, in most cases . . ., the presence or absence of the 'required modicum of social value' . . . ." [citation omitted].

19. See *Memoirs*, supra at fn. 2.

20. See, Kois v. Wisconsin, supra, where the court stated:
"A quotation from Voltaire in the flyleaf of a book will not constitutionally redeem an otherwise obscene publication . . . A reviewing court must, of necessity, look at the context of the material, as well as its content."

21. Communicative acts, while protected by the First Amendment, have not been given the same degree of protection that has been given to pure speech. e. g., United States v. O'Brien, 391 U.S. 367, 88 S.Ct.

1673, 20 L.Ed.2d 672 (1965); Deeds v. State, supra. And in order to determine whether a particular act will be protected as communicative conduct, an examination of the factual context in which that act was committed must indicate that the act was communicative and show the idea which the act was designed to express. See, Cowgill v. California, 396 U.S. 371, 90 S.Ct. 613, 24 L.Ed.2d 590 (1971); Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1968); Deeds v. State, supra. As the Court stated in United States v. O'Brien, supra: "We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." In the instant case, we have conduct without even an attempt to express a view.

22. "Commercial speech" has never been afforded the stringent protection accorded to political or social speech. See, Breard v. City of Alexandria, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951); Valentine

those persons who paid to view it.[23] Cf. Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966). See also, United States v. Ewing, 445 F.2d 945 (10th Cir. 1971); United States v. Wild, supra; Kahm v. United States, 300 F.2d 78 (5th Cir. 1962), cert. denied, 369 U.S. 859, 82 S.Ct. 949, 8 L.Ed.2d 18 (1962); Womack v. United States, 111 U.S.App.D.C. 8, 294 F.2d 204 (1961), cert. denied, 365 U.S. 859, 81 S.Ct. 826, 5 L.Ed.2d 822 (1961).

We therefore hold that opinion evidence as to whether the film in question met the *Roth-Memoirs* standards would not have been of significant benefit to the trier of fact and was therefore not required. United States v. Wild, supra; United States v. Davis, 353 F.2d 614 (2d Cir. 1965), cert. denied, 384 U.S. 953, 86 S.Ct. 1567, 16 L. Ed.2d 549 (1966); Kahn v. United States, supra; United States v. Womack, supra.

■ We also hold that the sequential representation of overt sexual conduct is not within the ambit of First Amendment protection under the *Roth-Memoirs* test. We agree with the viewpoint expressed by the Court of Appeals for the Second Circuit in United States v. A Motion Picture Film, supra, that a motion picture is not obscene where the sexual . . .

> ". . . material is part of an artistic whole and is united with and related to the story and characters which are presented. This is vastly different from a sudden unrelated episode taking place in public. The exhibition in a motion picture of an isolated instance of sexual intercourse . . ., which would indeed be equivalent to public display, could be halted under the established standards,"[24]

Accord, Groner v. United States, supra; Kahm v. United States, supra; Hunt v. State, supra. The motion picture in question depicting solely a series of isolated instances of explicit sexual activity, its exhibition could be prohibited; and the evidence is sufficient under both constitutional and statutory standards to support the trial court's finding that the film is obscene.

■ Finally, appellant contends that "the trial court committed error in not finding the defendant not guilty for the reason that the uncontroverted evidence showed appellant was a projectionist and as such, is excluded from the provisions of Article 527 of the Penal Code." On the date alleged in the complaint and information (November 18, 1969) Art. 527, V.A.P. C., did not exclude motion picture projectionists from liability under the law. The evidence in the instant case shows that appellant was not only the motion picture projectionist, but that he sold tickets to persons desiring to gain entry to the theater. The fact that Sec. 2 of Art. 527, V. A.P.C., was amended effective August 30, 1971, to provide that said article shall not apply to persons "in the course of employment as a moving picture machine operator, or assistant operator, in a motion picture theater in connection with a motion picture film or show exhibited in said theater if such operator or assistant operator has no financial interest in the motion picture theater wherein he is so employed other than his wages received or owed," cannot be said to apply retroactively to appellant. See Art. 16, V.A.P.C.

Appellant also contends that "moving picture machine operator(s)" were excluded from the penal provisions of Arts. 513

---

v. Chrestensen, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942). See also United States v. Reidel, supra.

23. One court has posed this issue as being whether the presentation of the sexual matter is "characterized by the forbidden 'leer of the sensualist' . . . ."

United States v. A 35 MM. Motion Picture Film, supra.

24. The depiction of overt sexual activity distinguishes the material from that presented in Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967), and in Hunt v. State, supra.

and 514, V.A.P.C., at the time alleged in the complaint and information, and therefore should exclude him from the penal sanctions of Art. 527, V.A.P.C. Arts. 513 and 514, V.A.P.C., define and proscribe the offense of keeping a disorderly house. The complaint and information in the instant case did not charge appellant with keeping a disorderly house under Arts. 513 and 514, V.A.P.C., but with exhibiting obscene materials under Art. 527, V.A.P.C., which did not exclude "motion picture projectionists" from its proscriptions on the date alleged in the complaint and information. These contentions are without merit.

The judgment is affirmed.