UNITED STATES of America, Plaintiff-Appellee,

v.

Chris PALMER, Defendant-Appellant.

No. 78–1122.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Jan. 26, 1979.

Decided Aug. 21, 1979.

David N. Williams, Asst. U. S. Atty., Albuquerque, N. M. (R. E. Thompson, U. S. Atty., Stanley K. Kotovsky, Jr., Asst. U. S. Atty., Albuquerque, N. M., with him, on briefs), for plaintiff-appellee.

Michael G. Rosenberg, Albuquerque, N. M., for defendant-appellant.

Before McWILLIAMS, BREITENSTEIN and McKAY, Circuit Judges.

BREITENSTEIN, Circuit Judge.

In a juvenile hearing to the court without a jury, appellant-defendant Palmer, a 17-year-old Indian, was found guilty of aiding and abetting the assault on a car and its occupants on an Indian reservation. Violations of 18 U.S.C. §§ 2, 113(c) and (f), 1153 and 5032 were charged. His appeal attacks the sufficiency of the evidence and the receipt in evidence of a statement which he made to an agent of the Federal Bureau of Investigation. We affirm.

On the night of November 4, 1977, a car driven by Peterson· John and containing eight other Indians was parked near Navajo Lake on the Navajo Indian Reservation in New Mexico. A second car drove up and one of its occupants talked to John and his passengers. The second car drove away and returned in 15–20 minutes. Its occupants then attacked John's car, breaking the headlights, slashing the tires, smashing the windows, and firing a shot into the hood of John's car. In the affray, several of John's passengers were wounded. John got out of the car to remonstrate with the attackers, was stabbed, and was later found dead some distance from where his car was parked. Two passengers required substantial medical treatment for their wounds. The second car left, returned a third time, and its occupants again battered John's car.

Defendant says that the court erred in receiving testimony of FBI agent Tarazon relating to statements made to him on November 10 by defendant. As a witness for the prosecution Tarazon said that defendant admitted participation in the affray.

At a hearing on November 29, in which defendant was represented by counsel, he elected to have the case proceed under the Juvenile Delinquency Act. 18 U.S.C. § 5031 et seq. An information was filed against him and others. Defendant was arraigned and pleaded not guilty. On December 6 his attorney filed a motion to suppress defendant's statement to agent Tarazon. On December 8 defendant appeared in court with his attorney and changed his plea to that of guilty. After interrogating defendant as to his participation in the affray, the court permitted the change of plea. Later, defendant's counsel told the court that the defendant had just told him that his parents were outside the courtroom. The court held a recess to allow defendant to confer

with his parents. After they had conferred, defendant's mother told the court that her son wished to stand trial. The court then permitted the withdrawal of the guilty plea. Without objection by defendant and without attention being called to the motion to suppress, the trial began the same day.

Agent Tarazon testified that he interviewed defendant after reading him his rights from the standard FBI "Advice of Rights Form." Defense counsel objected on the ground that he had not been furnished a copy of the form. After discussion of the change of plea, the court ruled that "under the circumstances" the witness could proceed. Tarazon said that before the interview he had discussed the matter with the defendant's mother and told her that he and another agent wished to talk to her son. He further said that she gave permission for him to do so.

As a defense witness the mother testified that the agent

"showed me his badge, who he was, and he said that my son was involved in a gang fight. And I asked him—he said he was going to question him and that someone was going to pick him up at 4:00 o'clock after school and bring him up to where the questioning was."

The mother also said that the agent told her that she could not be present at the interview "because if I was there, he might not tell the truth or he might not speak." In rebuttal the agent denied that he told the mother that she could not be present and reasserted that she consented to his interviewing her son. The agent further said that he talked to the mother at the hospital where she was employed. She told him that she had no telephone at her residence. The agent tried to reach her later in the day at the hospital but could not, because she was off duty. The interview with the defendant was later.

Although the mother expressed a desire to be present at the interview, she took no action to assure her presence. The interview occurred without the mother present. Defendant refused to sign a waiver of

rights form but agreed to make a statement. Without any objection, except on the ground of leading questions, the agent testified to the statements made by defendant to him with regard to the affray and his participation. Defense counsel cross-examined the agent in detail. The defense did not move to strike the agent's testimony and said nothing about the motion to suppress.

In his original and amended docketing statements in this court, the defendant did not claim as error the receipt of the agent's testimony. Also, he did not mention it in his first brief. The point was urged in his reply brief and in oral argument before this court.

The government contends that defendant has waived his objection to the agent's testimony. Its reliance on *Diggs v. Cities Service Oil Company,* 10 Cir., 241 F.2d 425, 427, is misplaced. In that case the issue in question was not mentioned in the trial court. In the instant case the defendant filed a motion to suppress. The government also relies on *United States v. Ewing,* 10 Cir., 445 F.2d 945, 949, vacated and remanded, 413 U.S. 913, 93 S.Ct. 3031, 37 L.Ed.2d 1022, wherein the court refused to consider an issue because it was not raised until the reply brief. The continuing validity of that holding is doubtful because the Supreme Court vacated the judgment of the court of appeals and remanded the case for further consideration of the mentioned issue. See, *United States v. Ewing,* 10 Cir., 491 F.2d 714. Accordingly, we consider the issue now raised.

■ We have only the testimony of the agent and of the defendant's mother. The defense did not request, and the court did not make, any findings of fact. Inherent in the court's general conclusion that the defendant was guilty of the offense charged, is approval of the receipt of the testimony relating to the statement of the defendant.

■ In *Fare v. Michael C.,* —— U.S. ——, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979) the court considered state juvenile proceedings involving a juvenile's statement to a

police officer after the denial of the juvenile's request that his probation officer be present. The court said, —— U.S. at ——, 99 S.Ct. at 2572, that admissibility of statements obtained during custodial interrogation requires "inquiry into the totality of the circumstances surrounding the interrogation," and that,

> "Where the age and experience of a juvenile indicate that his request for his probation officer or his parents is, in fact, an invocation of his right to remain silent, the totality approach will allow the court the necessary flexibility to take this into account in making a waiver determination."

The instant case must be decided "on the totality of the circumstances surrounding the interrogation." This is not a case like *People v. Burton*, 6 Cal.3d 375, 99 Cal.Rptr. 1, 491 P.2d 793, or *In re Patrick W.*, 84 Cal.App.3d 520, 148 Cal.Rptr. 735, vacated and remanded, —— U.S. ——, 99 S.Ct. 3093, 61 L.Ed.2d 870, for reconsideration in the light of *Fare v. Michael C.*, supra. Those cases were concerned with a request, arguable or otherwise, of a minor to see a parent before custodial interrogation.

In the instant case the circumstances may be summarized thus. The agent sought out the mother and told her that her son would be "picked up" after school and interrogated with regard to the affray. The mother admits the conversation with the agent. The agent said that the mother gave him permission to question the son. The mother does not contradict this statement but says that the agent told her she could not be present. The agent denies that statement. Later in the day, and before the questioning of the defendant, the agent tried unsuccessfully to communicate with the mother. She did not say that she made any effort to reach her son and tell him of her visit with the agent. The credibility of the witnesses is for the trial court. Defendant does not question the sufficiency of the warning and does not claim any misunderstanding of his rights. For all that appears in the record, the defendant is a normal 17-year-old. The defendant did not request the presence at the interview of his mother, a lawyer, or any one else. The totality of the circumstances establishes that defendant's waiver was knowing and voluntary, and that the testimony of the agent with regard to defendant's statements was properly received in evidence.

We turn to the sufficiency of the evidence to sustain the conviction. The government evidence established three visits by the assailants to John's car. On the second visit they battered the car and assaulted the occupants, killing one and wounding several. On the third visit, after the occupants had fled, they again battered the car. Defendant admitted to agent Tarazon that he was with the assailants on each visit and that on the second visit he struck the car with a belt buckle and "a small piece of pipe or a piece of metal."

The court was not requested to make, and did not make, specific findings of fact. It held that defendant, and the two other juveniles who were tried with him, had violated the Juvenile Delinquency Act. The evidence shows that the defendant aided and abetted an assault within the purview of 18 U.S.C. §§ 2, 113(c) and (f) and within Indian country, see 18 U.S.C. § 1153. The actions would have been crimes if committed by an adult and justified proceedings under the Juvenile Delinquency Act. See, 18 U.S.C. § 5031, et seq.

[4] Defendant argues that he may not be convicted as an aider and abettor because he did not share the criminal intent of his companions. We have held that to convict on aiding and abetting it must be proved that the "defendant willfully and knowingly associated himself with the unlawful venture and willfully participated in it as he would in something he wishes to bring about or to make succeed." *United States v. Austin*, 10 Cir., 462 F.2d 724, 732, cert. den., 409 U.S. 1048, 93 S.Ct. 518, 34 L.Ed.2d 501. The facts show that defendant and his companions had a community of intent to damage the car and do bodily harm to its occupants, one of whom was killed and others injured. Defendant's participation is shown by his three visits to the

parked car and his admitted actions of striking the car on the second visit. The fact that he is not shown to have physically injured any of the car's occupants does not detract from his voluntary involvement in the chain of events. By his own admissions he was more than a spectator. See *United States v. Tijerina*, 10 Cir., 446 F.2d 675, 677. The evidence, when viewed in the light most favorable to the government, together with inferences to be drawn therefrom, sustains the judgment of violation of the Juvenile Delinquency Act. *United States v. Hines*, 10 Cir., 564 F.2d 925, 927, cert. den., 434 U.S. 1022, 98 S.Ct. 748, 54 L.Ed.2d 770; *United States v. Curtis*, 10 Cir., 537 F.2d 1091, 1097, cert. den., 429 U.S. 962, 97 S.Ct. 389, 50 L.Ed.2d 330.

AFFIRMED.

McKAY, Circuit Judge, dissenting:

The Anglo-American legal system has long recognized the reduced capacity of minors to make reasonable decisions on their own behalf, as a result of their immaturity and lack of experience. The majority necessarily concludes that the minor in the instant case had the capacity to make an informed judgment regarding the waiver of important Fifth Amendment rights. But the record does not establish that he possessed such a capacity. I dissent because I believe the government failed to demonstrate that the minor was himself capable of waiving these important constitutional safeguards.

One of the teachings of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is that the waiver of Fifth Amendment rights must be knowing and intelligent in order to be valid. *See id.* at 475, 479, 86 S.Ct. 1602. The government bears the heavy burden of showing that such a waiver occurred. *Id.* The recitation of Fifth Amendment rights to a suspect helps ensure that a decision to waive those rights is an informed one. However, such a recitation will ensure nothing if the suspect is incapable of making an intelligent judgment on the subject.

A waiver cannot be knowing and intelligent unless the suspect has the requisite capacity. Incapacity should be presumed in the case of a minor. Absent parental assistance or a showing of some special circumstance, a child's decision to waive Fifth Amendment safeguards should not be considered a valid waiver.[1]

The Supreme Court recently had before it a case involving waiver by a minor of his Fifth Amendment rights. *Fare v. Michael C.*, —— U.S. ——, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979). In weighing the ability of the juvenile in *Fare* to make an intelligent decision regarding Fifth Amendment rights, the Court noted that the minor had enjoyed considerable experience with the police, had been arrested on several occasions, and had been subject to probationary supervision for several years. The record in that case thus suggested that the minor was experienced enough to make intelligent decisions in response to the recitation of *Miranda* warnings. No such indication is provided by the record in the instant case.

The government makes much of the fact that the Navajo boy in this case was 17 years old, but all this shows is that he is presumed incapable, as a minor, of exercising full-scale judgment on his own behalf. I do not believe that a voluntary waiver of rights under *Miranda* was shown by the mere facts that he was 17, that his rights were read to him, and that he claimed he understood them. In the absence of proof of some special circumstance like that present in *Fare*, I believe the defendant could have voluntarily waived his rights under *Miranda* only following parental consultation. Defendant's mother testified that she sought to be present at her son's interrogation.[2] This was not permitted.

---

1. For an insightful commentary on familial imperatives and children's rights, see Hafen, *Children's Liberation and the New Egalitarianism: Some Reservations About Abandoning Youth to Their "Rights,"* 1976 B.Y.U.L.Rev. 605.

2. No finding was made that Mrs. Pierce's testimony was not credible. Such a finding is not implicit in the trial court's judgment.

The record in this case demonstrates the difference that advice and counsel from a parent can make. Defendant had entered a plea of guilty. Following consultation with her son, Mrs. Pierce requested that he be allowed to stand trial. The court then allowed the plea to be withdrawn. Agent Tarazon indicated his own awareness of the difference parental involvement can make. According to Mrs. Pierce, he told her she could not be present at her son's interrogation because "if I was there, he might not tell the truth or *he might not speak.*"[3] Record, vol. 3, at 161.

Defendant had a right "not [to] speak." The government has not met its burden of showing that the purported waiver by defendant of that right was voluntary, for it has not shown that defendant possessed the capacity to make the requisite judgment. The defendant's custodial statements should not have been received into evidence. I would reverse.