**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Hollister K. COTTON,**
**Defendant-Appellant.**

No. 79–2165.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Jan. 28, 1981.
Decided March 11, 1981.
Rehearing Denied May 27, 1981.

Brian G. McConaty, Asst. U. S. Atty., Denver, Colo. (Joseph Dolan, U. S. Atty. and Daniel R. Christopher, Asst. U. S. Atty., Denver, Colo., on brief), for plaintiff-appellee.

Joseph Saint-Veltri, Denver, Colo. (Jeralyn E. Merritt, Denver, Colo., with him on brief), for defendant-appellant.

Before HOLLOWAY, McWILLIAMS, and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Hollister (Holly) K. Cotton (Cotton) appeals his jury conviction of distributing cocaine in violation of 21 U.S.C.A. § 841(a)(1)[1] and 18 U.S.C.A. § 2[2] as charged in Count II. Cotton was charged with Lewis Leon McCutcheon in a two count indictment. Prior to trial, the Court, on its own motion, severed Counts I and II, directed that trial would proceed on Count II first, and also, thereafter, severed the trials of Cotton and McCutcheon on Count II. Count II charged:

> On or about July 18, 1979, in the State and District of Colorado, HOLLISTER K. COTTON and LEWIS LEON McCUTCHEON did unlawfully, knowingly and intentionally distribute a quantity of cocaine, a Schedule II narcotic controlled substance in violation of Title 21 United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

The Government developed its case against Cotton largely through the testimony of two witnesses, Robert Baker, a paid government informant employed by the Department of Justice, Drug Enforcement Administration (DEA) and Dewey Greager, a special agent of the DEA. Baker and Greager testified in detail relative to negotiations involving themselves and McCutcheon for the purchase of cocaine and Cotton's participation therein.

Baker testified that: on the day of the sale he and McCutcheon drove from Carbondale, Colorado to Boulder, Colorado where they went to a Denny's restaurant; upon arriving at the restaurant, McCutcheon made a phone call, after which he left Baker "to meet his man across the street"; thereafter, Baker and McCutcheon left Denny's and walked across the street to the Dark Horse Bar "to meet his [McCutcheon's] man Holly at the Dark Horse Bar"; when they arrived at the bar he met Holly (Cotton); and that during their meeting at the bar, McCutcheon and Cotton related "there was a pound of cocaine available" and that the "meeting had been set for 9:30 that night to consummate the deal on the cocaine."

Agent Greager testified that: he met with Baker and McCutcheon on the evening of the sale at Denny's restaurant; they left Denny's and went for a ride in Baker's car during the course of which he was allowed to inspect the cocaine McCutcheon had for sale; while riding in the car "I asked McCutcheon if the weight was correct on it and if he in fact had weighed the cocaine. McCutcheon said, no, he had not weighed it, he was sure that Holly had weighed it because Holly had a set of scales . . ."; at a later meeting that evening at Denny's, McCutcheon introduced Cotton to him and stated "That's my man"; and that after a deal was agreed upon and the three (McCutcheon, Cotton and Greager) were exiting Denny's he told Cotton "We need to get together for some future business", to which Cotton replied, "No, I want you and Lewis to handle that. I don't want anything to do what [sic] that part of it."

---

1. Section 841(a)(1) provides:

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to . . . distribute . . . a controlled substance.

2. Section 2 provides in part:

Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

Subsequent thereto, McCutcheon and Cotton were arrested a short distance from Denny's.

Cotton's defense consisted of one witness who testified that Baker had, on several occasions, given him some pills at a time when he was in a great deal of pain.

On appeal Cotton contends the trial court erred in: (1) denying his motion to dismiss Count II of the indictment; (2) admitting statements of McCutcheon in violation of his Sixth Amendment rights; (3) declining to reread the instructions on aiding and abetting, after the jury had requested a clarification of said charge; (4) instructing the jury; (5) denying his numerous objections, requests and motions advanced during trial; and (6) failing to grant his motions for judgment of acquittal, new trial, and motion in arrest of judgment.

### I.

Cotton contends the trial court erred in denying his motion to dismiss Count II of the indictment. Cotton argues that the union of 18 U.S.C.A. § 2 and 21 U.S.C.A. § 841(a)(1) in Count II was improper inasmuch as the enactment of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (Act) brought all of the drug control laws into one comprehensive act. In support of this contention Cotton cites to *United States v. Stanley*, 545 F.2d 661 (7th Cir. 1976), *cert. denied*, 436 U.S. 917, 98 S.Ct. 2261, 56 L.Ed.2d 757 (1978), for the proposition that the Act was intended to deal in a "comprehensive fashion with the growing menace of drug abuse" and *United States v. Pruitt*, 487 F.2d 1241 (8th Cir. 1973) for the proposition that the Act is "all inclusive in covering the entire field of narcotics". We recognize that the Act was purposely drafted broad enough to encompass the entire gambit of the "growing menace of drug abuse" within the United States. However, we cannot conclude, as Cotton urges, that the passage of the Act was the death knell for charging aiding and abetting in drug related cases. Cotton has misconstrued the interrelationship of the crime of aiding and abetting with substantive criminal statutes.

In *Nye and Nissen v. United States*, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949) the Court opined:

Aiding and abetting rests on a broader base; it states a rule of criminal responsibility for acts which one assists another in performing. The fact that a particular case might conceivably be submitted to the jury on either theory is irrelevant. It is sufficient if the proof adduced and the basis on which it was submitted were sufficient to support the verdict. 336 U.S. at p. 620, 69 S.Ct. at p. 770.

In *United States v. Alvillar*, 575 F.2d 1316 (10th Cir. 1978) we stated, *citing to Breeze v. United States*, 398 F.2d 178 (10th Cir. 1968):

But that language [of 18 U.S.C. § 2] neither defines nor denounces as criminal any act or omission which, without it, would have been lawful. It is rather a statutory canon defining an ingredient of criminal responsibility generally, than the definition by law of any crime. It simply provides for punishment as a "principal" of any one who, by his conduct brings himself within the reach of the many suppositions included in ... either of the foregoing two paragraphs. 575 F.2d at pp. 1319–1320.

*See also: United States v. Sacks*, 620 F.2d 239 (10th Cir. 1980), *citing to United States v. Taylor*, 612 F.2d 1272 (10th Cir. 1980), *cert. denied*, 444 U.S. 1092, 100 S.Ct. 1060 (1980).

We have heretofore rejected contentions that 18 U.S.C.A. § 2 cannot be combined with other criminal charges. In *United States v. Alvillar, supra*, we rejected the contention that § 2 could not be charged together with 8 U.S.C.A. § 1324(a)(2) (importation of illegal aliens) *citing to Pereira v. United States*, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954) in which the Court opined:

To constitute a violation of these provisions, it is not necessary to show that petitioners actually mailed or transported anything themselves; it is sufficient if they caused it to be done. 575 F.2d at p. 1320.

*See also: United States v. Gonzalez,* 582 F.2d 1162 (7th Cir. 1978).

■ Applying these standards, we hold that the trial court did not err in denying Cotton's motion to dismiss Count II of the indictment. The union of 18 U.S.C.A. § 2 and 21 U.S.C.A. § 841(a)(1) in Count II was proper. In *United States v. Harper,* 579 F.2d 1235 (10th Cir. 1978), *cert. denied,* 439 U.S. 968, 99 S.Ct. 459, 58 L.Ed.2d 427 (1978), *citing to Roth v. United States,* 339 F.2d 863 (10th Cir. 1964) we observed that the essential elements of aiding and abetting are that a defendant "associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." 579 F.2d at p. 1238.

■ The Government, having established Cotton's participation in the cocaine sale, was not limited to charging him exclusively under 21 U.S.C.A. § 841(a)(1). A defendant may be convicted of two charges, even though the charges arise from a single act or series of acts, providing each requires proof of a fact not essential to the other. *Pereira v. United States, supra.* Adoption of Cotton's contentions would violate the efficacy of this well established, long standing principle.

Furthermore, although not dispositive, we observe that whereas Cotton was found guilty "as charged in the Indictment herein" [R., Vol. I, at p. 142] which included 21 U.S.C.A. § 841(a)(1) and 18 U.S.C.A. § 2, the "Judgment and Probation/Commitment Order" entered by the trial court provided only:

> Defendant has been convicted as charged of the offense(s) of possession with intent to distribute a Schedule II controlled substance (cocaine) in violation of Title 21, U.S.Code, Sec. 841(a)(1). [R., Vol. I, at p. 158].

Cotton's conviction under 18 U.S.C.A. § 2 was obviously not considered by the Court in the sentencing proceeding. Under these circumstances, Cotton's allegations of error surrounding the dual charges within Count II are without merit.

## II.

Cotton contends the trial court erred in admitting statements of co-defendant McCutcheon, and that the admission of McCutcheon's statements was in derogation of his Sixth Amendment rights.

■ "It is axiomatic that statements made by one conspirator out of the presence of other coconspirators may be used not only against the declarant but also against his coconspirators when made in furtherance of the conspiracy." *United States v. Rios,* 611 F.2d 1335, 1340 (10th Cir. 1979). *See also: United States v. Nixon,* 418 U.S. 683, 701, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1039 (1974); *United States v. Petersen,* 611 F.2d 1313 (10th Cir. 1979), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2986, 64 L.Ed.2d 854 (1980); *United States v. Andrews,* 585 F.2d 961 (10th Cir. 1978). Furthermore, even when conspiracy is not charged, as here, statements of coconspirators are admissible where the existence of a conspiracy is independently established. *United States v. Durland,* 575 F.2d 1306 (10th Cir. 1978). *See also: United States v. Brewer,* 630 F.2d 795 (10th Cir. 1980); *United States v. Petersen, supra.*

The record clearly establishes that the District Court applied *Andrews, supra,* and its progeny, correctly. Moreover, at defense counsel's request, the Court immediately charged the jury that they retained sole responsibility for assessing the evidence's probative value. [R., Vol. IV, at p. 58]. No error occurred in the admission of the challenged testimony.

## III.

Cotton contends the trial court erred in failing to reread the instructions given to the jury on aiding and abetting after the jury, in the course of its deliberations, requested a clarification of said charge from the Court. The trial court disposed of the jury's request in the following manner:

> THE COURT: Well, let's bring them in and see what they want, okay? Do you want to do that and bring in the jury? I'll get that cleared up.

(Jury now present)

THE COURT: I have a message from you which says:

"We would like to get clarification of the charge against Hollister Cotton regarding what is stated on the True Bill and the oral instruction given us (aiding and abetting Mr. McCalister—

THE FOREMAN: That should be McCutcheon.

THE COURT: Okay, you don't have those two confused.

THE FOREMAN: No, we don't, no.

THE COURT: All right. The defendant in this case, Hollister Cotton is charged with the offense of aiding and abetting the commission of the crime of knowingly or intentionally distributing a controlled substance.

THE FOREMAN: Okay, that's all we need to understand.

THE COURT: That's all you need to know?

(Jurors nodding heads)

THE FOREMAN: It wasn't stated so in the—(indicating).

THE COURT: That's all right. You're not in an English class. How about it?

MR. CASTEEL: [Prosecution counsel] No objection to the instructions.

MS. MERRITT: [Defense counsel] No objection.

THE COURT: All right, thank you.

(Jury retiring for further deliberations) [R., Vol. IV, at pp. 212–213].

Although defense counsel stated she had "no objection" to the trial court's response to the jury's question, appellate counsel now contends the response was "inadequate and inappropriate", and that the trial court should have reread the previously given instructions. We hold that the trial court did not err in responding to the jury's question.

 When the jury makes explicit its difficulty with a closing instruction, the court should "... clear them away with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946); *United States v. Walker*, 557 F.2d 741 (10th Cir. 1977).

However, the simple reading to the jury of an instruction previously given is a matter for the sound discretion of the trial court. *United States v. Brunetti*, 615 F.2d 899 (10th Cir. 1980). We will not impute an abuse of discretion to the trial court when, as here, the jury responds affirmatively and favorably to the trial court's clarification and no objection is lodged by trial counsel.

IV.

We have carefully considered Cotton's remaining allegations of error and find them to be individually and collectively without merit.

WE AFFIRM.