**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Maurice HARPER, Defendant-Appellant.**

**No. 77–1181.**

United States Court of Appeals, Tenth Circuit.

Aug. 1, 1978.

Vernon E. Lewis, Asst. U. S. Atty., Kansas City, Kan. (James P. Buchele, U. S. Atty., and Douglas B. Comer, Asst. U. S. Atty., Topeka, Kan., with him on the brief), for plaintiff-appellee.

David J. Phillips, Asst. Federal Public Defender, Kansas City, Kan. (Leonard D. Munker, Federal Public Defender, Kansas City, Kan., with him on brief), for defendant-appellant.

Before SETH, Chief Judge, and McWILLIAMS and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

This is an appeal from a conviction by a jury upon a charge of aiding and abetting the distribution of heroin, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The trial judge sentenced defendant-appellant Maurice Harper to a 12-year term, with a special parole term of 6 years, the sentence to be served consecutively to a previously imposed sentence under which defendant was incarcerated at the time of the trial.

Harper raises three issues on appeal: 1) the evidence is insufficient to support the verdict; 2) the court committed "plain error" in instructing the jury on the necessary elements of the offense; and 3) the refusal of a government witness to answer certain questions denied Harper his constitutional rights to confront witnesses against him and of due process.

The evidence adduced at trial showed that agents of the Drug Enforcement Administration (DEA) thought defendant Harper was dealing in drugs. They utilized a confidential informant, Richard Freeman, to attempt a controlled buy of heroin. The agents searched Freeman and his car to insure both were free of drugs, gave Freeman $600 and sent him to Harper's clothing store. Freeman waited outside until defendant Harper arrived and then both went inside. DEA agents maintained surveillance of all movements of the confidential informant from that time until many hours later when Freeman brought them the heroin.

While Freeman was inside the store with Harper, one Michael Hayden entered the shop and then a few minutes later left it. Freeman and Harper remained together the rest of the afternoon and evening, except during one period when Freeman dropped Harper off at a barbershop and later picked him up again. During that time they made trips to a bonding company (with Harper's father-in-law), visited the home of Harper's sister three times, drove to an apartment in Kansas City, Missouri, (with Hayden) and visited Trinity Lutheran Hospital.

Relevant to whether the evidence was sufficient to sustain the verdict, the surveillance indicated that Freeman and Harper went to defendant's sister Janice Harper's residence at about 6:30 p. m. Approximately 45 minutes later Hayden arrived at that residence. Ten minutes later Hayden, Freeman and defendant came out, drove to the Kansas City, Missouri, apartment where they stayed for about 20 minutes before they came out together and drove back to the residence of Janice Harper. After another 10 minutes, Hayden left. Then about 8:30 p. m. defendant and Freeman were observed leaving the residence and driving to Trinity Lutheran Hospital. After entering and leaving the hospital they again returned to defendant's sister's residence, where 15 minutes later Hayden showed up and stayed for about 15 minutes before driving away again. Ten minutes after this last departure of Hayden, Freeman came out, drove to the pre-arranged meeting place and handed DEA Agent Dempsey a substance which tested out as containing heroin.

The government's case consisted of the testimony by the surveillance agents about the controlled buy of the drug, proof of the tests on the drug, testimony of Hayden (who pleaded guilty to the charge of selling heroin), and the abbreviated testimony of Freeman. Defendant's evidence consisted of two individuals who were at the Janice Harper residence, one stating that he did not see defendant and Hayden enter any room together but did see Hayden and Freeman come out of a hallway together. The other stated that she sat on a couch with defendant Harper for several hours at the residence, that he never left the room, but she did see Hayden, Freeman and Janice Harper go into a bedroom together.

Hayden's testimony was that Harper introduced him to Freeman, and outside Freeman's presence asked him to find some heroin which Hayden understood was to be for Freeman. Hayden took money from the defendant, part of which was used to buy the heroin which he turned over to defendant Harper. He did not discuss the drug buy with Freeman because he did not know him, and did not talk to people he did not know. The morning of the trial he pleaded guilty to the charge of selling heroin to Freeman, but had not been sentenced at the time he was testifying.

Freeman testified that he knew the defendant, and on the date in question was working as an undercover informant for Agent Dempsey and the DEA. In that capacity he purchased a quarter of an ounce of heroin in a controlled drug buy, and turned it over to the agent. But when asked from whom he purchased the heroin, he refused to answer. He explained that because of a recent religious conversion he would talk about himself and his own actions, but would not testify either for or against anyone else. On cross-examination he admitted to having been a drug user and seller, and answered other questions about himself, but made the same refusal to indicate from whom he purchased the heroin.

## I

The essential elements of aiding and abetting were summarized in *Roth v. United States*, 339 F.2d 863, 865 (10th Cir. 1964):

> To be an aider and abetter requires that a defendant "associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." The proof must establish the commission of the offense by someone and the aiding and abetting by the defendant so charged . . . (footnotes omitted).

In determining whether the evidence is sufficient to support the verdict, we must consider it in the light most favorable to the government, together with any inferences which fairly may be drawn therefrom. *Mason v. United States*, 408 F.2d 903 (10th Cir.), *cert. denied*, 400 U.S. 993, 91 S.Ct. 462, 27 L.Ed.2d 441 (1971). Direct evidence, as distinguished from circumstantial, is not essential to a criminal conviction. *McCarty v. United States*, 409 F.2d 793 (10th Cir.), *cert. denied*, 396 U.S. 836, 90 S.Ct. 95, 24 L.Ed.2d 87 (1969).

Here, even though much of the evidence was circumstantial, we hold it was sufficient to support Harper's conviction. While Freeman's testimony was limited, he did state that he made a controlled buy on the date in question. The proof was sufficient from the agents' testimony that Freeman took funds of the DEA and bought heroin from one or more of the persons with whom he came in contact during that surveillance period. Hayden testified that while he dealt directly with defendant Harper, he understood it was Freeman who was wanting to buy the quarter ounce of heroin. Defendant's knowledge and participation are to be inferred from Hayden's other testimony as to the amounts of money given him (less than that turned over to Freeman by the DEA), the fact Hayden did not know Freeman previously, the fact Hayden's trips were to defendant's place of business or to the residence of defendant's sister while defendant was present, and the constant presence of Harper with Freeman and also with Hayden the only time both Freeman and Hayden left the premises together. The testimony of one defense witness that Harper never left a couch during a six-hour period is not credible in light of the surveillance testimony showing he left the house twice during that time.

Hayden's testimony and other evidence supports the conclusion that Harper did not have any heroin, that he acted as a go-between to secure the heroin Freeman wanted from Hayden, providing the setting and taking for his troubles and risks a portion of the DEA supplied funds. The missing link from the usual controlled drug buy case is simply the testimony of Freeman as to the person who delivered the heroin to him. Whether Hayden delivered it or Harper did, we hold the evidence by Hayden, Freeman and the agents supports the verdict beyond a reasonable doubt.

II

Harper raises the question of the sufficiency of the jury instructions for the first time on this appeal. He contends that since the indictment alleges that he aided and abetted Michael Hayden in the distribution of heroin, it was error for the trial court to fail to instruct that the government had the burden of proving beyond a reasonable doubt that Hayden had distributed the heroin, and that it was Hayden the defendant aided and abetted. As a general rule this Court will not review instructions to which no objections or exceptions were made, except where there is grave error which amounts to a denial of a fundamental right of the accused. *Lowther v. United States*, 455 F.2d 657 (10th Cir.), *cert. denied*, 409 U.S. 857, 887, 93 S.Ct. 139, 34 L.Ed.2d 102 (1972).

The failure to give the above-mentioned instructions in no way approaches the "grave" or "plain" error required by *Lowther*. Proving beyond a reasonable doubt that a specific person is the principal is not an element of the crime of aiding and abetting. It is not even essential that the identity of the principal be established. The prosecution only need prove that the offense has been committed. *United States v. Austin*, 462 F.2d 724 (10th Cir. 1972); *Feldstein v. United States*, 429 F.2d 1092 (9th Cir.), *cert. denied*, 400 U.S. 920, 91 S.Ct. 174, 27 L.Ed.2d 159 (1970). The fact that Hayden's name was specifically included in the indictment as a person whom Harper aided and abetted does not change what the prosecution must show. Proof of everything in the indictment is not required. When the language of the indictment goes beyond alleging the elements of the offense, it is mere surplusage and such surplusage need not be proved. *United States*

*v. Archer*, 455 F.2d 193 (10th Cir.), *cert. denied*, 409 U.S. 856, 93 S.Ct. 135, 34 L.Ed.2d 100 (1972).

### III

There is also no merit in Harper's assertion that the court should have declared a mistrial when Freeman refused to answer certain questions on the witness stand. The rationale of the case law dealing with invocation by a witness of his Fifth Amendment privilege against self-incrimination, and the resulting contention that the defendant's confrontation right has been abridged, is equally applicable to the present situation in which the witness refuses to testify for purely personal reasons. In looking at the circumstances of each case, there are two factors which are useful in determining if reversible error has been committed. One concerns possible prosecutorial misconduct in calling the reluctant witness. The other focuses on what, if any, prejudicial effect the witness' refusal to answer might have had. *Namet v. United States*, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963); *Skinner v. Cardwell*, 564 F.2d 1381 (9th Cir. 1977).

We see no prosecutorial misconduct in the record before us. While the government was aware of Freeman's reluctance to proceed, the prosecutor did not definitely know he would not testify. The testimony was that Freeman had been reluctant to do other things but would change his mind at the last minute. Since there was no self-incrimination problem, the prosecutor had every right to demand and expect the witness to testify. Although hindsight shows that compulsion of Freeman's testimony by use of the court's contempt power was of no effect, the prosecution could have reasonably assumed that the possibility of being cited for contempt by the Court would force Freeman to testify. The court did its best to force the testimony by warning the witness of its power to cite for contempt, recessing the trial overnight at that point, then sentencing the witness to 30 days in jail for his contempt when he refused to answer further questions.

Similarly, we cannot find that Freeman's refusal to identify the individual from whom he bought the drugs created such a prejudicial effect as to require a reversal. Freeman openly answered any questions about himself, on direct and cross-examination, including that he was working under cover for the DEA and purchased a quarter ounce of heroin on the date in question. Analogous to the situation in *Namet*, Freeman's refusal to testify as to the individual's identity from whom he purchased the narcotic is not the major source or only source of the inference that Harper committed the offense. If Freeman had answered as to the identity of the one making delivery to him it would have been merely cumulative support for an inference well established by other evidence. Freeman openly testified about his past criminal history and drug use, so the jury was fully aware of this damaging information about the witness.

Under all of the circumstances, we conclude that Harper was not denied his Sixth Amendment right to confront witnesses against him or any right to due process.

Affirmed.