UNITED STATES of America, Plaintiff-Appellee,

v.

Lawrence Jeffrey SACKS, Defendant-Appellant.

No. 79–1484.

United States Court of Appeals, Tenth Circuit.

Argued April 14, 1980.

Decided April 29, 1980.

---

Michael F. DiManna, Denver, Colo., for defendant-appellant.

Charles L. Casteel, Asst. U. S. Atty., Denver, Joseph Dolan, U. S. Atty., Denver, with him on brief, for plaintiff-appellee.

Before SETH, Chief Judge, and LOGAN and SEYMOUR, Circuit Judges.

LOGAN, Circuit Judge.

Lawrence Jeffrey Sacks appeals from his conviction by a jury on a charge of aiding and abetting a distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The only question on appeal is the sufficiency of the evidence to support his conviction.

To determine whether the evidence is sufficient, we must consider it in the light most favorable to the government, together with reasonable inferences fairly drawn therefrom. *United States v. Harper*, 579 F.2d 1235, 1239 (10th Cir.), *cert. denied*, 439 U.S. 968, 99 S.Ct. 459, 58 L.Ed.2d 427 (1978). So viewed, the record shows the following facts. Ronald Torres, a Denver police officer working undercover in connection with the Drug Enforcement Administration Task Force, received a telephone call from Aaron Ainbinder who inquired whether Torres was interested in purchasing one pound of cocaine. When Torres indicated he was, the price was set and the transaction was arranged for the following day. Ainbinder said there would be two other individuals with him at the meeting.

The following day, Torres and two other undercover officers arrived at the specified location where they were met by James Cecil and defendant Sacks. After introductions, Ainbinder joined the group. Defendant then stated that everyone should go to Torres' car and talk about the drug transac-

tion. Torres and defendant got into the car; Cecil and Ainbinder stood beside the open front door. During the discussion that followed, defendant stated that the transaction would occur at another location because the source would not leave that address. In response to Torres' question concerning the quality of the cocaine, defendant responded, "It's the best I've ever seen. It's very good stuff. I've sold three pounds this week." Defendant also stated that if Torres did not want the cocaine, he had other buyers who would take it. Defendant also asked to see the money that had been brought as payment for the drugs. This money was shown first to Cecil, then to defendant who acknowledged that the money appeared to be there. Cecil drew a map to help Torres find the site where the exchange was to occur; defendant orally assisted in giving Torres directions.

Upon the officers' arrival at the specified residence, Cecil and Ainbinder met the officers and led Torres and one other officer into a small den. Defendant was seated in the room with three other people. One of the individuals, Marco Dias, was weighing a quantity of cocaine on a scale; another was holding a plastic bag into which Dias was putting cocaine. Torres discussed with Dias the weighing of the cocaine and the possibility of future transactions. Torres then examined the cocaine. When he questioned its quality, defendant assured him it was of high quality. Defendant also stated that a sample of cocaine another person was then showing Torres exemplified the cocaine he was to buy when it was dried and chopped up with a razor blade. After this discussion Torres summoned the officer who had been waiting outside with the money. Upon entering the den, that officer asked who was to receive the payment. Defendant immediately responded, "I do." The officer threw the money on a coffee table in front of defendant and two others; all persons in the room were then arrested.[1]

---

1. Defendant's recitation of the facts in his brief points to a number of arguably inconsistent statements made by Torres and some by another officer, both of whom testified for the prose-

cution in another related trial. The function of this Court in reviewing the sufficiency of the evidence, of course, does not include consideration of the credibility of witnesses unless other

■ Although it is clear that evidence showing more than presence at the scene of a crime and knowledge that the crime is being committed is necessary to prove aiding and abetting, *King v. United States*, 402 F.2d 289 (10th Cir. 1968), the parties clash over what elements must be proved. Defendant relies upon *United States v. Harper*, 579 F.2d 1235 (10th Cir.), *cert. denied*, 439 U.S. 968, 99 S.Ct. 459, 58 L.Ed.2d 427 (1978), wherein this Court stated the elements as follows: "To be an aider and abetter requires that a defendant 'associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.'" *Id.* at 1238 (quoting *Roth v. United States*, 339 F.2d 863, 865 (10th Cir. 1964)). He argues that the last two clauses quoted constitute separate elements that must be proved. The government relies upon *United States v. Palmer*, 604 F.2d 64 (10th Cir. 1979), which states the evidence must show " 'defendant willfully and knowingly associated himself with the unlawful venture and willfully participated in it as he would in something he wishes to bring about or to make succeed.'" *Id.* at 67 (quoting *United States v. Austin*, 462 F.2d 724, 732 (10th Cir.), *cert. denied*, 409 U.S. 1048, 93 S.Ct. 518, 34 L.Ed.2d 501 (1972)). It argues the disjunctive use of "or" plainly shows the elements to be alternative statements of the same requirement.

Although the reports are replete with various formulations of the elements, those formulations are statements designed to add content to the fundamental proposition that "[a]iding and abetting means to assist the perpetrator of the crime." *United States v. Williams*, 341 U.S. 58, 64, 71 S.Ct. 595, 599, 95 L.Ed. 747 (1951) (footnote omitted). *Accord, United States v. Harris*, 441 F.2d 1333 (10th Cir. 1971). Both formulations urged by the parties simply state that the evidence must show the defendant "was doing something to forward the crime and that he was a participant rather than merely a knowing spectator." *King v. United States*, 402 F.2d 289, 291 (10th Cir. 1968). Here the trial court's instructions to the jury employed the language quoted in *United States v. Harper, supra*. This was proper.

■ Defendant's primary contention is that the evidence is insufficient because it only shows defendant was a knowing spectator; the core of the argument is defendant's premise that oral communication cannot constitute action or affirmative conduct in furtherance of a crime. In the context of this case the premise is clearly false. *See King v. United States*, 402 F.2d 289, 290 (10th Cir. 1968). By his spoken words, defendant sought to assure completion of the transaction that had been arranged. For example, he directed Torres to the site of the transaction and assured him that the cocaine was of a desirable quality and the proper quantity. This evidence plainly shows defendant acted affirmatively, though only through the act of speaking words calculated to assist in completing the sale.

Defendant also seeks to negate the effect of his participation by arguing that the distribution would have occurred without his oral statements and presence, because the evidence shows the transaction itself was arranged by other persons, and nothing done by defendant was a necessary step in the completion of the transaction. Defendant's attempt to inject a but-for causation requirement into the statute is without merit. The aider and abettor provision, 18 U.S.C. § 2(a), brings within its net one who "aids, abets, counsels, commands, induces or procures" commission of a crime, and is clearly broad enough to encompass conscious conduct *intended* to assist commission of an illegal act. In *United States v. Taylor*, 612 F.2d 1272, 1275 (10th Cir. 1980), we said, "Mere presence can be enough to support a conviction if it is intended to and does aid the primary actors." Here the jury was entitled to infer from statements

evidence shows the proffered evidence to be patently incredible. *See United States v. Harris*, 534 F.2d 207, 214 (10th Cir.), *cert. denied*,

429 U.S. 941, 97 S.Ct. 359, 50 L.Ed.2d 311 (1976). The testimony questioned here is not in that category.

made by defendant to Torres that defendant intended to and did aid the primary actors to facilitate the illegal transaction.

Affirmed.