**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Vanessa Elaine COOPER, and Darryl Keith Threat, Defendants-Appellants.**

Nos. 83–1287, 83–1288.

United States Court of Appeals,
Tenth Circuit.

March 13, 1984.

Certiorari Denied June 18, 1984.
See 104 S.Ct. 3543.

Amanda S. Meers, Asst. U.S. Atty., D. Kansas, Kansas City, Kan. (Jim J. Marquez, U.S. Atty., D. Kansas, Kansas City, Kan., with her on the brief), for plaintiff-appellee.

Ira R. Kirkendoll, Asst. Federal Public Defender, D. Kansas, Kansas City, Kan. (Charles D. Anderson, Federal Public Defender, D. Kansas, Kansas City, Kan., with him on the brief), for defendant-appellant Vanessa Elaine Cooper.

Thomas L. Boeding, Kansas City, Kan., for defendant-appellant Darryl Keith Threat.

Before DOYLE, McKAY and SEYMOUR, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

Defendant Cooper was convicted by a jury of passing and uttering counterfeit money in violation of 18 U.S.C. § 472. As to Threat, he was convicted by a jury of aiding and abetting the passing of counterfeit money also in violation of 18 U.S.C. § 472.

The main issue in this case on behalf of both Cooper and Threat is whether the trial court erred in denying the defendants' motions to suppress evidence that was obtained in connection with the arrests. Both of the defendants contend that the evidence should have been suppressed because it was the result of arrests without probable cause in violation of the Fourth Amendment. The defendants were arrested and there is no dispute about that; the dispute centers around the timing of the arrests. If the arrests occurred at the time the defendants' contend, the government concedes that there was a lack of probable cause. Under defendants' view of the facts the arrests would be unlawful, and therefore, the trial court erred in denying the motions to suppress. However, if the arrests occurred when the government asserts that they did, the trial court was correct in finding that the arrests were lawful and also correctly denied the motions to suppress.

There are remaining issues consisting of the following:

2. Whether Threat's conviction should be reversed because the evidence was insufficient as a matter of law, for the jury to find him guilty beyond a reasonable doubt.

3. Whether the trial court erred in failing to strike testimony regarding other alleged prior incidents.

4. Whether the jury panel represented a fair cross section of the community.

Some of the facts are undisputed. Others are sharply disputed by the parties. Secret Service Agents were present at the Indian Springs Shopping Center in Kansas City, Kansas on October 14, 1982. The agents had a pink and white Cadillac under surveillance due to prior incidents of passing of counterfeit money where a pink and white Cadillac had been on the scene. These prior passings included one on October 3, 1982, at a Kentucky Fried Chicken franchise. Counterfeit money was also passed at a Shell Oil Company self-service station on October 8 in St. Louis, Missouri, and on October 11 at a shoe store at the Indian Hills Shopping Center. This was the same shopping center as where the defendants were arrested three days later (on October 14). Following receipt of the counterfeit money on October 11, a shoe store clerk gave a description of the woman who passed the bill and of a pink and white Cadillac and its license plate.

Both the present defendants were inside the shopping center on October 14. Cooper purchased some children's clothing at J.C. Penney's with a counterfeit $100.00 bill. Threat waited outside the store. Both defendants exited the shopping center and entered Threat's car, a pink and white Cadillac. As the car started to leave the parking lot, the Secret Service agents followed the car.

At a hearing on the motions to suppress, agents testified that their initial intention was only to follow the car, but that when defendants' car began to move at a high rate of speed out of the parking lot, the agents decided to stop it. They used the flashing red lights on their car to effectuate the stop; they may have also used the siren. Following the stopping of the defendants' car, the agents approached, one going to either side. At this point the facts become contested.

Both of the defendants allege that when the agents reached their car they were told that they were under arrest. They also assert that the manner of the stop and subsequent show of authority amounted to arrest. Other police car and security vehi-

cles arrived. It is the government's position that Cooper voluntarily got out of the car. Cooper maintains that she was then required to empty her purse. The agents took money from her purse, $163.00, which was not returned to her until the next day. Neither of the defendants were told that they were free to leave. Cooper accompanied the agents back into the shopping center. The government maintains that Cooper did this voluntarily; it is her argument that she was told that she was under arrest, and that she felt she had to accompany the agents. The counterfeit bill was located, ascertained to be counterfeit and a store clerk identified Cooper as the person who had passed it. At that point, the government maintains, the defendants were arrested; that up to that time it was simply a temporary stop.

Threat remained in his car during the time that Cooper was in the shopping center with the agents. This was voluntary, according to the government. Threat states that as he was told he was under arrest, his actions were not voluntary.

Defendants made motions to suppress, arguing that they were arrested at the time their car was stopped without probable cause. The government conceded that it did not have probable cause at that time, but also maintained that the stopping of the car was proper investigatory action because the amount of evidence produced reasonable suspicion. The actual arrest occurred after probable cause existed. The trial court ruled that the stopping of the car constituted a justified investigatory stop. Implicit in this is the finding that the government's version of the facts was credible. The trial court also found that both defendants voluntarily cooperated with the agents.

Threat makes the same argument as Cooper. In addition, Threat argues that even if this was an investigatory stop, no reasonable suspicion existed to support the stop. The government responded that a reasonable suspicion did exist.

■ There are three categories of police/citizen encounters. The first is referred to as a police-citizen encounter and is characterized by the voluntary cooperation of a citizen in response to non-coercive questioning. This has been held to raise no constitutional issues because this type of contract is not a seizure within the meaning of the Fourth Amendment. *U.S. v. Black*, 675 F.2d 129, 133 (7th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 1520, 75 L.Ed.2d 945 (1983), citing *U.S. v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (Stewart, J.) (with Renquist, J. concurring). This type of encounter is not at issue in this appeal.

■ The second type of encounter is the *Terry*-type of stop. The standards here are set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Most courts characterize this as a "brief, non-intrusive detention during a frisk for weapons or preliminary questioning * * *." *U.S. Black* at 133. This is considered a seizure of the person within the meaning of the Fourth Amendment, but need not be supported by probable cause. In order to justify an investigatory stop, the officer need have only "specific and articulable facts sufficient to give rise to reasonable suspicion that a person has committed or is committing a crime." *Id.*

■ The final category is an arrest which is characterized by highly intrusive or lengthy search or detention. An arrest is justified only when there is probable cause to believe that a person has committed or is committing a crime. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *U.S. v. Black*, 675 F.2d 129 (7th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 1520, 75 L.Ed.2d 945 (1983).

The question here is whether the stopping of the defendants' car and subsequent events constituted an investigatory stop or an arrest. This line is difficult to draw and is determined based on the facts of each case. It is important to note, however, that although the *Terry* case permitted police to stop persons based on less than probable cause, other courts have repeatedly held that the *Terry* exception to

the requirement of probable cause to justify seizures is a narrow one. *U.S. v. Hill*, 626 F.2d 429, 433 (5th Cir.1980), *quoting Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).

The standard of review for denial of a motion to suppress is clear—the findings of fact must be accepted by the court unless clearly erroneous. If findings are not made, this court must uphold the ruling if there is any reasonable view of the evidence to support it. *United States v. Montos*, 421 F.2d 215, 219, n. 1 (5th Cir.1970), *cert. denied*, 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532. Credibility determinations are for the finder of fact, that is, the trial judge. *Id.*

The defendants rely on several cases for the proposition that the initial stop was actually an arrest. They are, of course, free to argue this, but to establish it is something different. In *U.S. v. Hill*, 626 F.2d 429 (5th Cir.1980), the court held that the defendant, although not formally placed under arrest, had in fact been arrested. There, a DEA agent had a description of a suspected drug courier. The DEA agent combed an airport looking for a person meeting the description. Hill fit the description. The agent approached him and asked if they could talk, and Hill agreed. The agent then asked permission to search Hill for drugs, but Hill refused to allow this. The agent then pointed to an office and asked Hill to accompany him there. Hill silently began to walk with the agent toward the office, but then began to flee. The agent caught up with Hill, and a formal arrest followed.

The court of appeals reversed the trial court and held that the agent's asking Hill to accompany him to an office "constituted a significantly greater intrusion than a brief *Terry* stop and, thus, must be classified as an arrest requiring probable cause." *U.S. v. Hill, supra*, at 435. The court observed that when the agent made the request the interrogation could no longer be characterized as brief; it "signalled the beginning of a more extended interrogation which was to occur in a place other than

where it began." *Id.* This seems not dissimilar from the facts at issue here. One important distinguishing factor is present, however; in *Hill, supra*, the Fifth Circuit noted that the district court had held that Hill had not consented to accompany the agent to the office. Here, the trial court found defendants had consented.

Although the findings of the trial court on defendants' motions to suppress are not as specific as one would like, this court cannot say that they are clearly erroneous. The trial court held that the defendants voluntarily cooperated and had given their consent. Implicit in this is a determination that the trial court believed the government's version of the facts, that is, that defendants were not placed under arrest at the time the car was stopped. While this court might have found differently, the credibility determination is left to the finder of the facts.

It cannot be said that the trial court's determination that there was voluntary cooperation is erroneous. The defendants argue that they did not consent and that because they had been arrested they felt compelled to obey the police. Once the agents' version that the defendants were not arrested when the car was stopped is accepted, there would need to be other evidence to overrule the trial court's finding of consent. In any event, no such evidence is present. This case became distinguishable from *U.S. v. Jefferson*, 650 F.2d 854 (6th Cir.1981), in which the court found that the defendants' consent to a search was not voluntary. The court found that the defendant was under duress because the agent had obtained defendant's permission to consent to the search only after threatening the defendant with illegal detention. Such facts are not present in this case.

The Defendant Threat maintains that regardless of the fact that it might have been an investigatory stop, the secret service agents had no reasonable suspicion that he was committing or had committed a crime. Threat argues that at the time the car was stopped, the agents had no knowledge that

a counterfeit bill had been passed at J.C. Penney's.

The government responds to this in support of their belief that they had a reasonable suspicion as follows:

1. Prior reportings of the passing of counterfeit money in which there was a pink and white Cadillac automobile involved;

2. Cooper met the description of the person identified at prior passings;

3. The high rate of speed when the defendants' car began to exit the parking lot.

The trial court found that under the standards of *Terry v. Ohio, supra,* the stop of the car was justified. We see no reason to upset this finding, because there were circumstances which at the very least created a high degree of suspicion. We conclude that the trial court ruled correctly in denying the defendants' motions to suppress. The pink and white Cadillac was connected with the other transactions and with Threat. Indeed, he acknowledged that he was the sole driver and owner of the car.

Threat next contends that the evidence was inadequate, as a matter of law, for the jury to find him guilty beyond a reasonable doubt. Threat was convicted of aiding and abetting the passing of counterfeit money. According to Threat, there is insufficient evidence to support his conviction. He maintains that the essential elements are (1) the passing of counterfeit money; (2) knowledge that the note was counterfeit, and (3) wilfully defrauding the government or some person. The defendant argues that the government's theory was that Threat had the counterfeit money, that he knew it was counterfeit, and that he gave it to Cooper with the requisite intent. The defendant contends that the government must prove that he was a participant and not a mere spectator. There is little danger that Mr. Threat would be mistaken for a mere spectator in view of the similar offenses and other circumstances which link Threat to these activities.

The government points out that there is substantial evidence of the other instances of the passing of counterfeit bills and Threat's connection with these bills. The government also maintains that this court must consider both the direct and circumstantial evidence, together with all reasonable inferences to be drawn therefrom from which the jury might find a defendant guilty beyond a reasonable doubt. We agree.

"To determine whether the evidence is sufficient, we must consider it in the light most favorable to the government, together with reasonable inferences fairly drawn therefrom." *United States v. Sacks,* 620 F.2d 239 (10th Cir.1980). The test to determine whether a defendant is guilty of aiding and abetting is whether the evidence shows that the defendant "was doing something to forward the crime and that he was a participant rather than merely a knowing spectator." *United States v. Sacks,* 620 F.2d 239, 241 (10th Cir.1980) quoting *King v. United States,* 402 F.2d 289, 291 (10th Cir.1968).

We have previously referred to the prior passings of allied counterfeit bills, and we have mentioned the presence of defendant's car at all four prior passings. Threat was identified as the person who passed counterfeit money at a prior incident. Evidence found in defendant's car might have indicated Threat's presence in St. Louis on October 8 when counterfeit money was passed in that city. There was also proof of many similarities in the four passings, including the October 14 passing which led to Threat's arrest.

Viewed in the light most favorable to the government, it appears that the jury could have inferred that Threat was a participant, i.e., that he had the requisite knowledge and intent.

The defendant contends that the trial court erred in admitting evidence regarding prior incidents of the passing of counterfeit money. The evidence of prior passages of money was admitted pursuant to Federal Rules of Evidence, 404(b), which provides as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

■ In a review of the evidentiary rulings of a trial court, this court may not reverse in the absence of an abuse of discretion. *Mason v. U.S.*, 719 F.2d 1485, 1490 (10th Cir.1983).

■ The defendant's contention that the admission of the evidence of prior passings was in error is lacking in merit.

Threat asserts that the prejudicial value of this substantially outweighed its probative value. Not so.

The government argues that this evidence was probative of Threat's knowledge and intent and thus was properly admitted pursuant to Federal Rules of Evidence 404(b).

There is no basis to find that the trial court's admission of evidence of prior passings constituted an abuse of discretion. We disagree with defendant's contentions. The incidents were similar and links with the instant case are present.

A note should be made in connection with the passing of counterfeit money and the use of a pink and white Cadillac frequently. This cannot be regarded as coincidental.

Threat also argues that none of the jurors were black, and that he, therefore, moved the court to dismiss the panel. The trial court denied this motion. According to defendant, prospective jurors are chosen from the list of persons who actually voted in the last general election. Defendants contend that this does not insure a jury selected at random from a fair cross section of the community because proportionally fewer blacks vote than whites.

■ The government responds that 28 U.S.C. §§ 1861, 1867(e), *et seq.*, provides the exclusive means for a litigant to attack the jury panel and that the defendant failed to follow the procedures set forth for this purpose.

It has been held that 28 U.S.C. § 1867(e) provides the exclusive means for a party charged with a federal crime to challenge a jury. Under subsection (a) the defendant has a choice of a motion to dismiss or a motion to stay the proceedings against him.

Pursuant to subsection (d) a defendant is required to submit a sworn statement of facts. If this statement sets forth facts, which if true would constitute a failure to comply with the provisions of the Act, the defendant then will present evidence in support of his motion.

There is not the slightest indication that the defendant complied with the exclusive procedures provided for in 28 U.S.C. § 1867(e). Also, there is no evidence in the record to support defendant's allegations. Accordingly, the trial court properly denied defendant's motion.

The judgment of the district court is, therefore, affirmed.

McKAY, Circuit Judge, concurring:

While I concur in the court's opinion, I write this statement to emphasize that the peculiar facts distinguish it from similar cases which required a different result.

Even though the show of force was substantial in order to stop the moving vehicle in this case, there was an abundance of evidence to support an "articulable suspicion" that a crime had been committed. *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). The initial stop was thus legally justified. Thereafter events moved very quickly. While not free from all doubt, there was sufficient evidence to justify the trial court's findings that what transpired after the stop was consensual up to and including the point at which the police clearly had probable cause to make an arrest.

Of course, each case must be judged on its own facts in determining whether a justified *Terry*-type stop, *see Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d

 

889 (1968), converted it into a detention exceeding permissible bounds which would vitiate subsequent consent to continued investigation. After careful review, I am persuaded that the trial court had sufficient evidence to conclude that such boundary was not passed in this case. On its facts, I believe this case is distinguishable from such cases as *Royer* and *United States v. McCranie,* 703 F.2d 1213, 1218 (10th Cir.1983) (McKay, dissenting).