996 F.2d 312
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Jose Raul OSORIO-GONZALEZ, also known as Loui Ramos,
Defendant-Appellant.
 No. 92-2189.
 United States Court of Appeals, Tenth Circuit.
 May 20, 1993.
 
 Before MOORE, BALDOCK, and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 This is an appeal from the denial of a motion to suppress evidence and oral statements obtained by federal agents on board an Amtrak train stopped in Albuquerque, New Mexico. The issues are whether the agents had an articulable suspicion to detain defendant for questioning on the train and whether they seized his luggage without reasonable suspicion. We substantially agree with the district court's analysis of the issues and affirm.
 
 
 2
 Defendant, using the name Louie Ramos, obtained a one-way Amtrak ticket from Los Angeles to Chicago with cash, using a telephone number of the University of Southern California as his call back phone. Prior to the arrival of the train in Albuquerque, Agent Candelaria, who had the entire manifest from that train, called the number and determined no one by the name of Louie Ramos was connected with the University.
 
 
 3
 When the train arrived, defendant was identified by an attendant and located on the train platform. Agent Ochoa, who was in a Border Patrol uniform standing on the platform, told Agent Candelaria when defendant spotted Ochoa he reacted nervously.[1]
 
 
 4
 Defendant returned to the train but not through his own car. Agents Small and Candelaria followed him to the lounge car. Small identified himself with his DEA badge and asked if he could speak to defendant. He agreed. Small inquired where he was going and whether he could see the defendant's ticket. Defendant replied he was going to Chicago from Los Angeles and indicated the ticket was in his room. Small asked to see it, and defendant led the agents to his room without comment.
 
 
 5
 With the agents in the corridor, defendant entered the room and obtained his ticket from a jacket. Small looked at the ticket and immediately returned it. He asked defendant for a picture ID, but defendant could only produce a social security card. When asked, defendant said he was not carrying any illegal drugs, but he would not consent to a search of his luggage by either Small or a sniffer dog.
 
 
 6
 Agent Candelaria then left his position down the corridor and joined the conversation. While looking at the manifest in his hands, Candelaria asked defendant about his call back number. Defendant could not recite the number and lunged at Candelaria in an attempt to snatch the manifest from his hand.
 
 
 7
 Small then told defendant the agents would like to detain the bag for the sniffer dog and, if the dog alerted, they would keep the bag until a search warrant could be obtained. He said, if the dog did not alert, the bag would be returned. Several times, however, Small told defendant he was not being detained and could continue on to Chicago. Although asked more than once by Small for a Chicago address where the bag could be forwarded, defendant never responded.
 
 
 8
 With the defendant and Agent Small still standing in the hallway, Agent Candelaria obtained the bag from defendant's room and placed it with others in a luggage area approximately five feet away. In defendant's presence, the dog was called in and alerted to the contents of the bag. Although the officers decided not to arrest defendant unless a warrant search produced contraband, the train conductor asked them to remove defendant from the train because he had been drinking alcohol contrary to Amtrak rules. Defendant responded by swinging at both officers, missing Small but hitting Candelaria. They removed him apparently with force.
 
 
 9
 Agent Small then obtained a warrant to search the suitcase. Approximately ten kilograms of cocaine was found.
 
 
 10
 The district court denied defendant's motion to suppress, and he entered a conditional guilty plea. Sentenced to 120 months, he now appeals the denial of the motion.
 
 
 11
 Despite defendant's argument to the contrary, the trial court held the original encounter in the lounge car did not constitute a seizure. With that conclusion we agree. Florida v. Bostick, --- U.S. ----, 111 S.Ct. 2382, 2386 (1991). The conclusion applies to the entire transaction.
 
 
 12
 There is simply no evidence indicating defendant understood at any time that he was not free to continue his trip. To the contrary, up to the moment he refused the conductor's request to leave the train, all the evidence indicates he was advised on several occasions he was not being detained and was free to go. Nonetheless, we shall separate the events into the encounter in the lounge car and the confrontation in the corridor outside.
 
 
 13
 Although the evidence would seem to justify a finding the original meeting in the lounge was a consensual encounter, the district court nonetheless held it was a Terry stop in which the officers had knowledge of "specific and articulable facts sufficient to give rise to reasonable suspicion that a person has committed or is committing a crime." United States v. Black, 675 F.2d 129, 133 (7th Cir.1982), cert. denied, 460 U.S. 1068 (1983), cited in United States v. Cooper 733 F.2d 1360, 1363 (10th Cir.), cert. denied, 467 U.S. 1255 (1984). The facts identified by the court were: (1) the one way ticket from Los Angeles to Chicago; (2) purchased with cash on the day of travel for $424; and (3) with the use of a false phone number.[2] The court held that while taken alone none of these facts would be sufficient, but, when combined, they provided reasonable suspicion. That conclusion is supported by the record.
 
 
 14
 To the extent the conversation in the hallway outside defendant's room might be construed as an investigative detention, the facts in evidence already described constitute sufficient reasonable suspicion to permit the inquiry.[3] We are persuaded further those facts gave the officers sufficient reason to believe defendant's bag contained narcotics, justifying their setting the bag aside for the unobtrusive investigation by the dog. United States v. Place, 462 U.S. 696, 706-08 (1983). Most notable of the circumstances is the false number given with the purchase of defendant's ticket.
 
 
 15
 The government explained at oral argument, the purpose of the call back number is to permit Amtrak to contact the passenger to give notice of any change in the train schedule. It is, therefore, in the passenger's interest to make certain the number given is correct. When defendant was unable to recall the number associated with his reservation and made an effort to snatch the incriminating evidence from the hands of Agent Candelaria, he was acting contrary to the way a reasonable officer might expect an innocent passenger to act.
 
 
 16
 If, for example, the recorded number was incorrect because a mistake had been made when the number was given or recorded, one would expect the defendant still would be able to recall his own phone number. His inability to give any number and his subsequent response to Agent Candelaria, coupled with defendant's refusal to give a forwarding address, what the officers already knew about this defendant, and their previous experience with drug couriers, would justify their suspicion defendant possessed narcotics.
 
 
 17
 AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 It was later developed defendant was a once deported illegal alien, but this was not determined until after his arrest
 
 
 [2]
 Agent Small testified that in the four years he had participated in the drug interdiction program on this particular train route, he had made between 180-200 seizures of narcotics. Of the persons from whom the seizures had been made, 60% had purchased their tickets with cash; 80-90% had been traveling alone; 75% had been in sleeper cars; 99% had purchased round-trip tickets; and 97-98% had used false call back numbers
 
 
 [3]
 Because the entire conversation took place in the hallway, except for the brief period when defendant entered the room to retrieve the ticket, the coercive circumstances found in United States v. Ward, 961 F.2d 1526 (10th Cir.1992), and United States v. Bloom, 975 F.2d 1447 (10th Cir.1992), are not present here