**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 3 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA, )
)
Plaintiff-Appellee, )
)
v. ) No. 97-8000
) (D.C. No. 96-CR-5)
DANIEL L. ORTIZ, ) (Dist. of Wyoming)
)
Defendant-Appellant. )

---

**ORDER AND JUDGMENT**[*]

---

Before **BRORBY, BARRETT, and MCKAY** Circuit Judges.

---

Daniel L. Ortiz (Ortiz), an enrolled member of the Northern Arapaho Tribe, appeals his conviction and sentence for aggravated sexual assault.

Background

In the early morning hours of December 16, 1995, Lisa Lynn Maxon (Maxon) provided Ortiz a ride to his home at 1563 Seventeen Mile Road, which is within the exterior boundaries of the Wind River Indian Reservation in the State of Wyoming. When they arrived at Ortiz's trailer about 2:00 a.m., Ortiz's friends were already there. Maxon, Ortiz

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of Tenth Cir. R. 36.3.

and his friends then remained at Ortiz's trailer drinking, visiting, and smoking marijuana.

Maxon testified that at approximately 3:30 or 3:45 a.m. she decided to leave, but when she went outside she discovered one of her truck tires was flat. Ortiz said he could borrow a jack for her in the morning and offered to let her sleep in his bed until then. Maxon testified she awoke with Ortiz lying on top of her saying, "that's why you're out here is to have sex with a real man." Maxon then described how Ortiz anally assaulted her with a wooden or metal object in the bathroom; vaginally and anally assaulted her with a wooden plunger and a mop handle on the bed; and sexually assaulted her. Maxon testified she fled when Ortiz passed out on top of her. At the urging of her partner and a rape counselor, Maxon sought medical attention and reported the assault to authorities.

In a search of Ortiz's home, FBI agents seized a toilet plunger and a mop handle from the bathroom, as well as a wooden drumstick from the kitchen. The FBI also found a pair of white ladies panties behind the drapes on the floor of Ortiz's bedroom.[1]

On January 26, 1996, Ortiz was charged with knowingly causing and attempting to cause Maxon to engage in a sexual act by using force against her, in violation of 18 U.S.C. §§ 2241(a) and 1153. At Ortiz's arraignment, the parties agreed to deoxyribonucleic acid (DNA) testing of the three wooden objects seized from Ortiz's trailer and to a continuance of the trial until after testing was complete.

---

[1] Maxon testified that Ortiz forcibly removed her panties during the initial struggle on the bed and that she left without them.

At trial, the government introduced evidence of the DNA analysis. Anjali Ranadive (Ranadive), a molecular biologist/forensic scientist for Cellmark Diagnostics, testified as to the DNA testing protocol, the actual physical procedures used to conduct the tests, and the quality control techniques utilized to ensure accurate results. Ranadive specifically explained how she analyzed samples taken from the end of a mop, the end of a plunger and the end of a drumstick. She testified she found human DNA in the sample taken from the mop handle.[2] She then explained the DNA could not have originated from Ortiz, but was consistent with the blood sample obtained from Maxon. Thus, Ranadive testified Maxon could not be excluded as the donor of the DNA found on the mop handle, but Ortiz could.

Ranadive also testified about the statistical probabilities of an individual having the same DNA profile as the sample taken from the mop handle. She stated this profile was found once in every 5,700 people in the Hispanic population, once in every 15,000 people in the African-American population, and once in every 29,000 people in the Caucasian population. She explained these statistics demonstrate that this particular DNA profile is rarer in Caucasians than in Hispanics and African-Americans. However, it does not identify the individual DNA donor.

On September 26, 1996, the jury found Ortiz guilty of aggravated sexual assault. On December 10, 1996, the district court sentenced Ortiz to 160 months imprisonment and

---

[2] Ranadive testified she also found human DNA in the sample taken from the plunger, but she was unable to further amplify the genetic types or markers that are needed for identification purposes.

ordered him to make restitution in the amount of $ 5,474.15.

On appeal, Ortiz contends: (1) American Indians were under-represented on the petit jury venire in violation of his Fifth and Fourteenth Amendment right to equal protection, and (2) the district court committed plain error by admitting Ranadive's expert testimony.[3]

Discussion

I.

Ortiz contends his Fifth and Fourteenth Amendment right to equal protection was violated by the under-representation of American Indians on the petit jury venire. Ortiz argues he was denied a jury which represented a fair cross-section of the community. This argument is based on his allegations that the American Indian population of the district of conviction is 0.71% compared to 18.48% in the county wherein he resided and where the acts allegedly occurred.[4]

The Jury Selection and Service Act of 1968 ("the Act"), 28 U.S.C. §§ 1861-1878,

---

[3] Ortiz also raises an issue of ineffective assistance of counsel. However, "[t]he rule in this circuit . . . is that claims of constitutionally ineffective counsel should be brought on collateral review," not on direct appeal. United States v. Galloway, 56 F.3d 1239, 1242 (10th Cir. 1995) (in banc). Hence, to avoid the necessity of addressing the issue twice and to allow further development of the record, we decline to address Ortiz's ineffective assistance of counsel claim on direct appeal and dismiss without prejudice in order to permit him to raise the same in his first petition on collateral review. See id.

[4] With these statistics, Ortiz raises some troubling questions about the implementation of the Jury Selection and Service Act in Wyoming, which would merit careful consideration if properly raised. However, as discussed hereinafter, Ortiz's failure to properly and timely raise the issue prevents our consideration of the issue on direct review.

"governs the selection of grand and petit juries in federal court, and 'seeks to ensure that potential grand and petit jurors are selected at random from a representative cross section of the community and that all qualified citizens have the opportunity to be considered for service.'" United States v. Contreras, 108 F.3d 1255, 1265 (10th Cir. 1997) (quoting United States v. Bearden, 659 F.2d 590, 593 (5th Cir. 1981), cert. denied, 456 U.S. 936 (1982)), *petition for cert. filed*, ___U.S.L.W. ___ (U.S. June 7, 1997) (No. 96-9286). See 28 U.S.C. § 1861. "No citizen shall be excluded from service as a grand or petit juror in the district courts of the United States . . . on account of race, color, religion, sex, national origin, or economic status." 28 U.S.C. § 1862.

The Act requires each United States District Court to devise and place into operation a written plan for random selection of grand and petit jurors that shall be designed to achieve the objectives of sections 1861 and 1862. 28 U.S.C. § 1863(a). The District Court for the District of Wyoming had devised and placed into operation a plan at the time of Ortiz's conviction.

Section 1867 provides "the exclusive means by which a person accused of a Federal crime, . . . may challenge any jury on the ground that such jury was not selected in conformity with the provisions of [the Act]." 28 U.S.C. § 1867(e). See United States v. Bedonie, 913 F.2d 782, 794 (10th Cir. 1990) ("Section 1867(e) 'provides the exclusive means for a party charged with a federal crime to challenge a jury.'") (quoting United States v. Cooper, 733 F.2d 1360, 1366 (10th Cir.), cert. denied, 467 U.S. 1255 (1984)), cert. denied, 501 U.S. 1253

(1991).

Section 1867(a) requires a party challenging the jury selection process to make his challenge by motion "before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier."  28 U.S.C. § 1867(a).  The Act's "procedural requirements are designed to give the district court an opportunity to evaluate the alleged noncompliance and to correct such noncompliance before precious judicial resources are invested in a trial." Contreras, 108 F.3d at 1266.  "Strict compliance with these procedural requirements is essential."  Id.

Ortiz did not challenge the venire or the selection of the petit jury before the district court, much less in a manner consistent with the procedural requirements of the Act.  "'If a party fails to comply with the statutory procedures [of § 1867], a court may not hear the claim.'"  Bedonie, 913 F.2d at 974 (quoting United States v. Martinez-Nava, 838 F.2d 411, 413 (10th Cir. 1988)).  See also Contreras, 108 F.3d at 1267-68 (defendant's claim under the Act precluded for failure to accompany the motion challenging the jury selection process with a sworn affidavit as required by § 1867(d)); Cooper, 733 F.2d at 1366 (no indication defendant complied with exclusive procedures provided for in § 1867).  Thus, Ortiz is procedurally barred from challenging the petit jury and we will not consider his claim

further.[5]

At oral argument, Ortiz's counsel argued that we are required to conduct *de novo* review of Ortiz's claim because of its "constitutional magnitude," even though Ortiz failed to raise the issue in the district court or comply with the requirements of the Act. This is not the case. The opinion relied upon, <u>Duren v. Missouri</u>, 439 U.S. 357 (1979), does not support this contention. In <u>Duren</u>, the defendant objected on constitutional grounds to his petit jury prior to trial, thus, preserving the issue for later consideration. <u>Id</u>. at 360. In contrast, Ortiz failed to present the issue to the district court, much less present the issue prior to trial, as required. To allow Ortiz to raise the issue of jury selection on appeal without having timely and properly raised the issue in the district court would essentially give Ortiz "two bites at the apple." As the Court stated,

> If . . . time limits are followed, inquiry into an alleged defect may be concluded and, if necessary, cured before the court, the witnesses, and the parties have gone to the burden and expense of a trial. If defendants were allowed to flout . . . time limitations, on the other hand, there would be little incentive to comply with [the] terms when a successful attack might simply result in a new indictment prior to trial. Strong tactical considerations would militate in favor of delaying the raising of the claim in hopes of an acquittal, with the thought that if those hopes did not materialize, the claim could be used to upset an otherwise valid conviction at a time when reprosecution might well be difficult.

---

[5] In addition, the government points out that if Ortiz believed a trial in Cheyenne would have violated his constitutional right(s) by the exclusion of Indians from his jury venire and/or panel, then Ortiz could have requested that his trial be held in the Lander Division, which includes Fremont County and the Wind River Indian Reservation where the alleged acts occurred. However, Ortiz did not avail himself of this opportunity.

Davis v. United States, 411 U.S. 233, 241 (1973) (discussing defendant's waiver of his challenge to the grand jury pursuant to Federal Rule of Criminal Procedure 12(b)(2) for his failure to raise the issue before trial).

II.

Ortiz asserts the district court erred in admitting the expert testimony regarding the DNA evidence. Ortiz argues that the data relied upon by Ranadive in forming her opinions and inferences violated Federal Rule of Evidence 703 because it was not reliable for the purpose of determining or offering an opinion as to the identity of the person whose DNA was found on the mop handle and that the evidence was offered in a manner which invaded the province of the jury by improperly offering an opinion as to the credibility of the victim.

Ordinarily, we review the district court's decision to admit expert testimony for abuse of discretion. United States v. Markum, 4 F.3d 891, 895 (10th Cir. 1993). However, where, as here, the defendant failed to object to the testimony at trial, our review is for plain error only. Id. See Fed. R. Crim. P. 52(b). We will not reverse for plain error "unless the error 'seriously affect[s] the fairness, integrity or public reputation of [the] judicial proceeding[].'" United States v. Olano, 507 U.S. 725, 732 (1993) (quoting United States v. Young, 470 U.S. 1, 15 (1985)). Additionally, as a prerequisite to plain error review under Rule 52(b), we must first determine that an "error" indeed was committed. United States v. Gomez, 67 F.3d 1515, 1520 (10th Cir. 1995), cert. denied, ___ U.S. ___ (1996).

After review of the record, we hold the district court did not err in admitting the expert testimony regarding the DNA evidence. Federal Rule of Evidence 703 provides that "the facts or data . . . upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing" and they need not be admissible in evidence if of a type reasonably relied upon by experts in the particular field. Fed. R. Evid. 703. See Werth v. Makita Elec. Works, Ltd., 950 F.2d 643, 648 (10th Cir. 1991) (stating three bases for expert opinion testimony under Rule 703).

In this case, Ranadive relied on the evidence samples sent to her from the Wyoming State Crime Lab to determine that the DNA found in the sample taken from the mop handle could not have come from Ortiz and that it could have come from the victim, Maxon. Ranadive did not testify to the identity of the individual whose DNA was found on the mop handle. She testified as to the probability of finding someone with that specific DNA profile in each of the three ethnic groups for which Cellmark Diagnostic keeps a database. See United States v. Davis, 40 F.3d 1069, 1075 (10th Cir. 1994) ("[S]tatistical probabilities are basic to DNA analysis and their use has been widely researched and discussed."), cert. denied, 514 U.S. 1029 (1995). Ortiz had ample opportunity to cross-examine Ranadive regarding the samples, sample handling, and the statistical probabilities relied upon by her and to argue to the jury about sample contamination and probabilities. Therefore, we hold Ranadive relied on and based her opinion on the type of data reasonably relied upon by experts in her field.

In addition, we hold that Ortiz's argument that Ranadive's testimony "improperly vouched for the credibility of the victim" is without merit.  A careful reading of the trial testimony reveals no obvious or substantial errors in Ranadive's testimony nor any substantial errors, which may have seriously affected the fairness or integrity of the case, in the prosecution's use of Ranadive's testimony in closing argument.

For the foregoing reasons, we AFFIRM Ortiz's conviction and sentence.

**AFFIRMED.**

Entered for the Court:

James E. Barrett,
Senior United States
Circuit Judge